Alan Diamante CBN#180149
Email: adiamante@alandiamantelaw.com
LAW OFFICE OF ALAN R.
DIAMANTE, APLC
510 W. 6th St. Suite 506
Los Angeles, CA 90014
Telephone: (213) 943-4555
Facsimile: (213) 943-4553
Attorney for Plaintiffs
SANDRA MUÑOZ, an individual; and
LUIS ERNESTO ASENCIO-CORDERO,
an individual

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA MUÑOZ, *et al.*, | ) CASE NO. 2:17-cv-00037-AS |
| | ) |
| Plaintiffs, | ) **PLAINTIFFS' OPPOSITION TO** |
| v. | ) **DEFENDANTS' MOTION TO** |
| | ) **DISMISS; MEMORANDUM OF** |
| UNITED STATES DEPARTMENT OF | ) **POINTS AND AUTHORITIES** |
| STATE, *et al.* | ) |
| | ) **DATE: November 16, 2017** |
| Defendants. | ) **TIME:  10:00 a.m.** |
| | ) **HON. ALKA SAGAR** |
| | ) |
| | ) |
| | ) |

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION…………………………….....................................1

II.     LEGAL STANDARD……………………………….....................................2

III.    LEGAL ARGUMENT…………………………….....................................4

      A.    Justice Kennedy's Controlling Concurrence In *Kerry v. Din* Compels The Denial Of Defendants' Motion To Dismiss Because The Government Has Failed To Provide A Bona Fide Factual Reason For Denying Mr. Asencio-Cordero's Visa Application In Accordance With *Kleindienst v. Mandel*……....…………………….......4

          1.    Justice Kennedy's Concurrence in *Kerry v. Din* Is Controlling And Articulates The Limitations Of The Consular Non-Reviewability Doctrine................................................5

          2.    The Government Has Failed To Provide Any Bona Fide Factual Reason For Denying Mr. Asencio-Cordero's Visa Application Under *Kleindienst v. Mandel*……...........................…..6

          3.    The Government's Citation To 8 U.S.C. § 1182(a)(3)(A)(ii) Did Not Indicate That The Government Had Relied Upon A Bona Fide Factual Basis For Its Decision…..............................9

          4.    8 U.S.C. § 1182(a)(3)(A)(ii) Granted The Agency "Unbridled Discretion," Thereby Requiring Disclosure Of Facts Underlying

The Decision To Deny Mr. Asencio-Cordero's Admission Into The U.S.............................................................................11

5.    The Government's Citation To 8 U.S.C. § 1182(b)(3) In Its Motion To Dismiss Does Not Obviate The Requirement That The Government Provide A Bona Fide Factual Reason For Denying Mr. Asencio-Cordero's Application Or Prevent Courts From Properly Policing Its Delegated Authority.....................................................................13

6.    The Government's Violation Of The Rule In *Mandel*, *Din*, And *Cardenas* Violates Plaintiffs' Fundamental Right To Marriage Because It Is Neither Narrowly Tailored Nor Rationally Related to Meeting the Government's Interest.............17

B.    This Court Should Deny Defendants' Motion Because the Permanent Visa Denial Was Conducted In Bad Faith.............................19

C.    This Court Should Deny Defendants' 12(b)(1) Claim In Its Motion To Dismiss Because This Court Has Subject Matter Jurisdiction Over This Case......................................................................23

D.    The Government's Motion To Dismiss Does Not Address Plaintiffs' Count III Respecting Separation of Powers. Therefore, The Motion To Dismiss Should Be Denied Respecting This Count........24

IV.    CONCLUSION...................................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Abourezk v. Reagan,*

    785 F.2d 1043 (D.C. Cir. 1986).......................................................................1, 15

*American Academy of Religion v. Napolitano,*

    573 F.3d 115 (2d Cir. 2009).....................................................................................16

*Ashcroft v. Iqbal,*

    556 U.S. 662 (2009)......................................................................................................3

*Ass'n of Am. Med. Coll. v. United States,*

    217 F.3d 770 (9th Cir. 2000)......................................................................................3

*Bell Atl. Corp. v. Twombly,*

    550 U.S. 544 (2007)......................................................................................................3

*Bustamante v. Mukasey,*

    531 F.3d 1059 (9th Cir. 2008).............................................................8, 16, 24

*Cardenas v. United States,*

    826 F.3d 1164 (9th Cir. 2016)................................................................ *passim*

*Delgado v. Holder,*

    648 F.3d 1095 (9th Cir. 2011)................................................................................17

*Dreier v. United States,*

    106 F.3d 844 (9th Cir. 1996)................................................................3

*Judulang v. Holder,*

    132 S. Ct. 476 (2011)................................................................15

*I.N.S. v. St. Cyr.,*

    533 U.S. 289 (2001)................................................................16

*Kerry v. Din,*

    135 S. Ct. 2128 (2015)................................................ *passim*

*Kleindienst v. Mandel,*

    408 U.S. 753 (1972)................................................ *passim*

*Lee v. City of L.A.,*

    250 F.3d 668 (9th Cir. 2001)................................................ 4

*Lopez v. Smith,*

    203 F.3d 1122 (9th Cir. 2000)................................................4

*Loving v. Virginia,*

    388 U.S. 1 (1967)................................................................17

*Obergefell v. Hodges,*

    135 S.Ct. 2584 (2015)................................................................17

*Parents Involved in Community Schools v. Seattle School Dist. No. 1,*

    55 U.S. 701 (2007)................................................................18

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS   v

*Patel v. Reno*,

    134 F.3d 929 (9th Cir. 1997)....................................................................15

*Porter v. Jones*,

    319 F.3d 483 (9th Cir. 2003)......................................................................3

*Safe Air for Everyone v. Meyer*,

    373 F.3d 1035 (9th Cir. 2004)....................................................................3

*Sopcak v. N. Mountain Helicopter Serv.*,

    52 F.3d 817 (9th Cir. 1995)........................................................................3

*Thornhill Publishing Co. v. General Tel. & Electronics*,

    594 F.2d 730 (9th Cir. 1979)......................................................................3

*United States v. Windsor*,

    133 S.Ct. 2675 (2013)..............................................................................18

*White v. Lee*,

    227 F.3d 1214, (9th Cir. 2000)....................................................................3

*Zablocki v. Redhail*,

    434 U.S. 374 (1978)................................................................................18

*Zadvydas v. Davis*,

    533 U.S. 678 (2001)................................................................................16

**STATUTES:**

8 U.S.C. § 1182(a)(2)..................................................................................12

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS     vi

8 U.S.C. § 1182(a)(3)(A)(ii)............................................................................*passim*

8 U.S.C. § 1182(a)(3)(B)............................................................6, 8, 9, 10, 11

8 U.S.C. § 1182(b)(3)........................................................................ 13, 14, 17

**RULES:**

Fed. R. Civ. P. 8(a)(2)..........................................................................................3

Fed. R. Civ. P. 12(b)(1).......................................................1, 2, 3, 4, 23, 25

Fed. R. Civ. P. 12(b)(6).............................................................1, 2, 4, 25

Fed. R. Civ. P. 15(a)............................................................................................4

9 FAM 301.2-2..................................................................................................22

9 FAM 301.102(3)............................................................................................22

**OTHER AUTHORITIES:**

Restatement (Second) of Contracts § 205 cmt. d (1979)................................20

5B Charles A. Wright & Arthur R. Miller, Federal Practice and

Procedure, § 1350, pp. 211, 231 (3d ed. 2004)..............................................3

Henry M. Hart, *The Power of Congress to Limit the Jurisdiction of Federal*

*Courts: An Exercise in Dialectic*, 66 Harv. L. Rev. 1362, 1380-1383 (1953)..............17

R. Fallon, *On Legislative Courts, Administrative Agencies, and*

*Article III*, 101 Harv. L. Rev. 916, 938 (1988)............................................15

*Brief of Professors In Support of Fauzia Din as Amicus Curiae*,

at 27-29, *Cardenas v. United States*, 826 F.3d 1164 (9th Cir. 2016)...........................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Daily Mail Reporter, *Latinos Being Denied Green Cards Because Their 'Tatoos Make Officials Believe They Belong To Gangs'*, July 12, 2012, http://www.dailymail.co.uk/news/article-2172371/Latinos-denied-green-cards-tattoos-make-officials-believe-belong-gangs.html...........................................................................................................12

Wikipedia, the Free Encyclopedia, *Pollice Verso or Verso Pollice* at https://en.wikipedia.org/wiki/Pollice_verso (last visited October 16, 2017).................23

# I.    INTRODUCTION

Plaintiffs SANDRA MUÑOZ ("Ms. Muñoz") and LUIS ERNESTO ASENCIO-CORDERO ("Mr. Asencio-Cordero") are a husband and wife seeking to be reunited in their home in the United States. Mr. Asencio-Cordero has been denied admission to this country at the Consulate in El Salvador without notice as to any factual reason for being denied entry except for the citation of a statute which accuses Mr. Asencio-Cordero of seeking in substance "to enter the United States to engage solely, principally, or incidentally in … any other unlawful activity." *See* 8 U.S.C. § 1182 (a)(3)(A)(ii). This lawsuit was filed to determine the Plaintiffs' rights under the U.S. Constitution and other Federal law. This case and this opposition stands for the proposition that:

> The Executive has broad discretion over the admission and exclusion of aliens, but that discretion is not boundless. It extends only as far as the statutory authority conferred by Congress and may not transgress constitutional limitations. It is the duty of the courts, in cases properly before them, to say where those statutory and constitutional boundaries lie.

*Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986).

Defendants now file their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.    LEGAL STANDARD

In the course of its dealings with Mr. Asencio-Cordero and Ms. Muñoz, the Department of State ("DOS") has never provided a factual basis for denying Mr. Asencio-Cordero's immigrant visa on the ground of inadmissibility.

Despite repeated attempts to obtain additional facts and information from the government regarding Mr. Asencio-Cordero's denial, with the assistance of counsel and Congresswoman Judy Chu, the government would not furnish any factual reason for denying the application, and instead cited 8 U.S.C. § 1182(a)(3)(A)(ii) as the sole basis for the denial.

Plaintiffs now file an action, seeking a finding that DOS's failure to provide a factual basis for its refusal to admit Mr. Asencio-Cordero is insufficient grounds for an inadmissibility determination. DOS has shown no facially legitimate bona fide reason for determining Mr. Asencio-Cordero is inadmissible because it has not established a facial connection to the statutory ground of inadmissibility.

Pending before this Court are Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) lack of subject matter jurisdiction and 12(b)(6) failure to state a claim.

A motion pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) tests whether the court has subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). Such a motion may be "facial" or "factual." *Safe*

*Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). That is, a party mounting a Rule 12(b)(1) challenge to the court's jurisdiction may do so either on the face of the pleadings or by presenting extrinsic evidence for the court's consideration. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Thornhill Publishing Co. v. General Tel. & Electronics*, 594 F.2d 730, 733 (9th Cir. 1979). Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. *Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995); *Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. *See* 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004). When deciding a Rule 12(b)(1) motion, the court construes all factual disputes in favor of the non-moving party. *See Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The determination of whether a complaint

satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed, even if not requested by the plaintiff. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).

## III.   LEGAL ARGUMENT

The Court should deny Defendants' Motion to Dismiss under 12(b)(1) and 12(b)(6).

**A.**   **Justice Kennedy's Controlling Concurrence In *Kerry v. Din* Compels The Denial of Defendants' Motion To Dismiss Because The Government Has Failed To Provide A Bona Fide Factual Reason For Denying Mr. Asencio-Cordero's Visa Application In Accordance With *Kleindienst v.Mandel***

1.  **Justice Kennedy's Concurrence In *Kerry v. Din* Is Controlling And Articulates The Limitations Of The Consular Non-Reviewability Doctrine**

In its Motion to Dismiss, the Government argues that Justice Kennedy's concurrence in the Supreme Court decision of *Kerry v. Din* is the controlling opinion and the relevant standard in the matter *sub judice*. *See* (Motion to Dismiss, ECF No. 37 ("Mot. to Dismiss"), line 1 at 9). In *Din***,** Justice Kennedy, in turn, found the Court's decision in *Kleindienst v. Mandel* applicable to the facts of *Din* and to matters such as this case. *See Kerry v. Din*, 135 S. Ct. 2128, 2141 (2015); *see also Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972). In *Din*, Justice Kennedy reiterated:

> *Mandel* held that an executive officer's decision denying a visa that burdens a citizen's own constitutional rights is valid when it is made "on the basis of a facially legitimate and bona fide reason." *Id.* at 770.
>
> **Once this standard is met**, "courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" the constitutional interests of citizens the visa denial might implicate. *Ibid.* (emphasis added).

In *Mandel*, the court held that Congress could delegate the power to exclude would-be immigrants to the executive branch and that courts could not "look behind" a

"legitimate exercise of that discretion." *See Mandel*, 408 U.S. 753, 770 (1972). According to the Supreme Court, the agency was called on to weigh competing interests (the interests of U.S citizens in associating the noncitizen on one hand and the interests of the government in excluding the noncitizen on the other). *Id.* Although the balancing of those interests was "properly … placed in the hands of the Executive," it did not mean the Executive had "sole and unfettered discretion." *Id.* at 769.

In so ruling, the Court in *Mandel* reviewed the decision to ensure there was at least a "facially legitimate and bona fide reason" for the agency's exercise of discretion. *Id.* Indeed, the court held that the power delegated to the Executive was conditioned on the Executive acting on the basis of a facially legitimate and bona fide reason. *Id.* at 770.

## 2.   The Government Has Failed To Provide Any Bona Fide Factual Reason For Denying Mr. Asencio-Cordero's Visa Application Under *Kleindienst v. Mandel*

In its Motion to Dismiss, the Government grossly mischaracterizes Justice Kennedy's holding in *Din*. Justice Kennedy held that: "the Government satisfied any obligation it might have had to provide Din with a facially legitimate and bona fide reason for its action when it provided notice that her husband was denied admission 'under 1182(a)(3)(B).'" *Din*, 135 S.Ct. at 2141. In no way shape or form did he hold, as the Government might desire, that the Government's obligation to furnish a

"facially legitimate and bona fide reason" for its action was satisfied by merely citing to a "valid and narrow statutory ground of inadmissibility." *See id.* Indeed, that would only form part of the government's obligation.

As interpreted by the Ninth Circuit in *Cardenas*, *Din* requires that the consular officer must (1) show he denied the visa under a valid statute of inadmissibility; and either (2) cite an admissibility statute that "specifies discrete factual predicates" the consular officer must find to exist before denying a visa, or (3) point to a fact in the record that "provides at least a facial connection to" the statutory ground of inadmissibility. *See Cardenas v. United States*, 826 F.3d 1164, 1172 (9th Cir. 2016).

Here, as stated in the Complaint, the Government did not provide the Plaintiffs with any such evidence. Additionally, the record is bereft of any indicia providing or specifying a facial connection to the cited statute of 8 U.S.C. § 1182(a)(3)(A)(ii). Accordingly, the Government's mere citation of 8 U.S.C. § 1182(a)(3)(A)(ii) fails to satisfy requirements (2) or (3).

While the government appears nonplussed in its Motion to Dismiss regarding the agency's failure to marshal any facts in support of its determination, the failure is critical in light of the cases it cites to advance its principal argument. (Mot. to Dismiss, at 6 – 13.)   Notably, in both *Din* and *Cardenas*, facts supplied in the record are persuasive in determining whether a visa denial is appropriate.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS   7

In *Din*, Justice Kennedy found the consular officer's citation of 8 U.S.C § 1182 (a)(3)(B) satisfied *Mandel's* "facially legitimate and bona fide standard" because there was at least evidence in the record that Din, the citizen spouse, admitted in her Complaint that her husband worked for the Taliban government. *See Kerry v. Din*, 135 S. Ct. at 2141. Justice Kennedy concluded further that even if this was insufficient to support exclusion, it provided at least a facial connection to terrorist activity. *Id.*

In *Cardenas*, U.S. Immigration and Customs Enforcement ("ICE") form I-213 stated the plaintiff in that matter "was identified as a Sureno gang associate … by Nampa Police Department" and that "[he] was a passenger in a vehicle owned and driven by a [person with] identifiers consistent to being a member of the Sureno Gang." *See Cardenas,* 826 F.3d at 1168. The *Cardenas* court found that this supplied the bona fide factual reason that provided a "facial connection" to the statutory ground of inadmissibility. *See id.* at 1062 (9th Cir. 2008). The same rings true for the established precursors to *Din* and *Cardenas. See Bustamante v. Mukasey*, 531 F.3d 1059 (9th Cir. 2008) (citing record containing correspondence from the head agent of the local DEA office providing reason to believe the applicant was a controlled substance trafficker); *see also Mandel*, 408 U.S. at 770 (1972) (noting the Attorney General disclosed facts motivating his decision to deny Mandel a waiver, and that the Court cited those facts as demonstrating the Attorney General validly exercised the plenary power that Congress delegated to the Executive). Accordingly, the

Government's mere citation to 8 U.S.C. § 1182(a)(3)(A)(ii), by itself, was insufficient to deny the Mr. Asencio-Cordero's application for a visa.

> **3.** **The Government's Citation To 8 U.S.C. § 1182(a)(3)(A)(ii) Did Not Indicate That The Government Had Relied Upon A Bona Fide Factual Basis For Its Decision**

The Government's mere citation to 8 U.S.C. § 1182(a)(3)(A)(ii) does not "specify discrete factual predicates the consular officer must find to exist before denying a visa" as *Din* and *Cardenas* require. *See Din*, 135 S.Ct. at 2141; *see Cardenas*, 826 F.3d at 1170.

First, the purpose of the rule in Justice Kennedy's *Din* concurrence is to ensure that the consular officer "must find" that there exists a "discrete factual" basis to deny a visa. This can be done in two ways, either directly, by citing a specific fact, or indirectly, by citing a statute that includes discrete factual predicates. No court has ever found that 8 U.S.C. § 1182(a)(3)(A)(ii) includes "discrete factual predicates." Extending Justice Kennedy's finding for 8 U.S.C. § 1182(a)(3)(B) to the statute in the instant case would create a loophole for consular officers to avoid Justice Kennedy's requirement that they "must" cite a discrete factual basis at least to deny a visa.

Second, despite the Government's mischaracterization that 8 U.S.C. § 1182 (a)(3)(A)(ii) is an even more specific statutory ground of inadmissibility than that which the *Din* Court found to satisfy the "facially legitimate and bona fide" test

(1182(a)(3)(B)), § 1182(a)(3)(A)(ii) is far less specific or discrete in pertinence to the principles which guide Justice Kennedy's Opinion in *Din*. (Mot. To Dismiss, lines 10 - 13 at 12).

Indeed, in *Din*, Justice Kennedy paid particularly close attention "to the area of national security, for which Congress has provided specific statutory directions pertaining to visa applications by noncitizens who seek entry to this country." *See Din*, 135 S.Ct. at 2141. Justice Kennedy's concurrence emphasized the "specific direction" of § 1182(a)(3)(B) by stating "it established specific criteria for determining terrorism-related inadmissibility." The foregoing findings furnished the basis of Justice Kennedy's conclusion that § 1182(a)(3)(B) specified discrete factual predicates.

Unlike § 1182(a)(3)(B), however, § 1182(a)(3)(A)(ii) is markedly non-discrete and non-specific. The statute makes inadmissible "[a]ny alien who a consular officer or the Attorney General knows, or has reasonable ground to believe, seeks to enter the U.S. to engage solely, principally, or incidentally in … any other unlawful activity." In stark contrast, § 1182(a)(3)(B) identifies, for example, individuals who (I) have "engaged in terrorist activity; (II) there is reasonable ground to believe they will engage in terrorist activity; (III) incited terrorist activity, etc. Conceivably, "any other unlawful activity" could apply to a panoply of different criminal acts. There is no seeming limiting principle to § 1182(a)(3)(A)(ii)'s application. Moreover, although section 1182(a)(3)(A)(ii) falls under the subheading "Security and Related Grounds,"

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS     10

its import reaches conduct far broader than these parameters. It supplies no criteria for determining security related inadmissibility.

Based on such broad import, § 1182(a)(3)(A)(ii) is not only non-specific and non-discrete as Justice Kennedy required for § 1182(a)(3)(B) in *Din*, but it is also unbridled in its expansion of executive discretion, a particular concern for Justice Kennedy.

### 4.    8 U.S.C. § 1182(a)(3)(A)(ii) Granted The Agency "Unbridled Discretion," Thereby Requiring Disclosure Of Facts Underlying The Decision To Deny Mr. Asencio-Cordero's Admission Into The U.S.

In *Din*, Justice Kennedy's finding that § 1182(a)(3)(B) did not provide "unbridled discretion" was supplied to distinguish that statute from the one in *Mandel* which required disclosure of facts to demonstrate the valid exercise of executive power. *See Din*, 135 S. Ct. at 2141 (2015). Accordingly, *Din* makes clear that Due Process compels the Government to provide an applicant with facts underlying the denial of his visa where the executive has been afforded "unbridled discretion."

We argue that the broad and non-specific language of § 1182(a)(3)(A)(ii) provides the Government with "unbridled discretion," compelling that the facts underlying Mr. Asencio-Cordero's denial be provided.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS     11

To illustrate the "unbridled discretion," by its own definition, under § 1182 (a)(3)(A)(ii), a consular officer could deny a visa applicant entry to the United States if the consular officer had reasonable ground to believe the applicant sought to enter the U.S. to incidentally engage in jay walking.[1] Contrary to the Government's position, Justice Kennedy could not have intended an interpretation of such boundless discretion without requiring disclosure of a factual basis to validate the same. Such an interpretation creates fertile ground for abuse.[2] Furthermore, it would be incorrect to propose all possible criminal activity fits under the purview of 8 U.S.C. §1182 (a)(3)(A)(ii) because there is another part of 1182, section (a)(2), which is dedicated to "criminal and related grounds." By separating "criminal and related grounds" from "national security and related grounds" in two separate sections of 8 U.S.C § 1182, Congress made clear its intent for § 1182(a)(3)(A)(ii) to not apply to all categories of potential non-security-related criminal activity.

---

[1] In the Complaint, the Plaintiffs addressed Mr. Asencio-Cordero's tattoos and the fact that the Plaintiffs' prior counsel preemptively raised their existence in response to the visa denial. In raising the issue, Plaintiffs were speculating that Mr. Asencio-Cordero's visa application was denied exclusively because of the tattoos. This speculation was borne out of a longstanding practice of the consulate denying visa applications due to tattoos, in contravention of First Amendment principles. Daily Mail Reporter, *Latinos Being Denied Green Cards Because Their 'Tatoos Make Officials Believe They Belong To Gangs'*, July 12, 2012, http://www.dailymail.co.uk/news/article-2172371/Latinos-denied-green-cards-tattoos-make-officials-believe-belong-gangs.html. Notwithstanding this belief, the Government furnished the plaintiffs with no factual basis in light of the same.

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS     12

**5.    The Government's Citation To 8 U.S.C. § 1182(b)(3) In Its Motion To Dismiss Does Not Obviate The Requirement That The Government Provide A Bona Fide Factual Reason For Denying Mr. Asencio-Cordero's Application Or Prevent Courts From Properly Policing Its Delegated Authority**

The Government erroneously claims 8 U.S.C. § 1182(b)(3) exempts them from providing notice of the "specific provision or provisions of law under which the alien is inadmissible." (Mot. to Dismiss, lines 6 - 10 at 7.)

First, § 1182(b)(3) does not bar disclosure of the <u>facts</u> underlying the statutory basis to permanently bar Mr. Asencio-Cordero's admission into the U.S. Indeed, the Government notified the Plaintiffs that it was denying admission to Mr. Asencio-Cordero under § 1182(a)(3)(A)(ii). (Mot. to Dismiss, lines 22 - 25 at 4.) The issue here is the non-disclosure of facts and not the non-disclosure of pertinent statutory provisions.

Second, the requirement that the consular officer provide some information—a facially legitimate and bona fide reason for its decision—does not interfere with the government's right to withhold specific provisions of law due to valid national security concerns.

---

[2] Indeed, the statutory phrase "any other unlawful activity" should only refer to

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS      13

Third, and most importantly, § 1182(b)(3) cannot be utilized to permit the Government to violate Due Process with impunity and without judicial oversight. Section 1182 (b)(3) specifically provides "[p]aragraph (1) does not apply to any alien inadmissible under paragraph (2) or (3) of subsection (a)." *See* § 1182(b)(3). There can be no judicial oversight and corrective action to ensure the alien is truly inadmissible without the provision of a bona fide factual predicate for denying an applicant admission.

The necessity of such review can be no more compelling than in the circumstances at bar, where the Government cites a statute of broad import, such as section 1182(a)(3)(A)(ii), conceivably reaching conduct well beyond the confines of "national security." Such an interpretation would render § 1182(a)(3)(A)(ii) impermissibly vague.

Justice Kennedy did not grant the Government a pass from furnishing a facially legitimate and bona fide reason for its denial. *See Din*, 135 S. Ct. at 2141 (2015). Justice Kennedy also noted § 1182(b)(3) was applicable in *Din* because it was clear the "visa application was denied due to terrorism or national security concerns." *Id.* As discussed above, it is entirely unclear whether Mr. Asencio-Cordero was denied admission to the U.S. due to national security concerns. Indeed, § 1182(a)(3)(A)(ii), read broadly, can reach more conduct than those affecting issues of national security.

---

unlawful activity related to national security under 8 U.S.C. § 1182(a)(3)(A)(ii).

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS     14

The position that § 1182(b)(3) neither bars the Plaintiffs from being entitled to a bona fide factual basis nor the Court's obligation to ensure the pertinent agency's fidelity to the scope of its powers has the force of precedent and history.

The court has an obligation to ensure that the agency is acting within the scope of Congress' authority. *See, e.g. Abourezk*, 785 F.2d at 1061 (in the context of consular visa decisions, it is the duty of the courts to say where the statutory boundaries lie). Without such review, there is no rule of law. *See Judulang v. Holder*, 132 S. Ct. 476, 484 (2011) (in the context of discretionary immigration decisions, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decision making"); R. Fallon, *On Legislative Courts, Administrative Agencies, and Article III*, 101 Harv. L. Rev. 916, 938 (1988) ("The underlying constitutional conception is that wielders of governmental power must be subject to the limits of law, and that the applicable limits should be determined, not by those institutions whose authority is in question, but by an impartial judiciary.")

Therefore, a court must demand a limited showing to ensure that the agency is not acting outside the boundary of its authority as established by Congress or acting in a wholly arbitrary or capricious manner. *E.g. Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997) (noting jurisdiction to hear challenges to the authority of the consul to take or fail to take an action). Given the limited nature of the showing required, and the ability to review affidavits or documents *in camera*, this review need not impinge on

legitimate security concerns. *See, e.g.*, *Bustamante*, 531 F.3d at 1062 (upholding "facially legitimate reason" for denial of visa on the grounds that the Consulate "had reason to believe" that applicant was a controlled substance trafficker based on information received from another agency); *American Academy of Religion v. Napolitano*, 573 F.3d 115, 126 (2d Cir. 2009) (holding that "the identification of both a properly construed statute that provides a ground of exclusion and the consular officer's assurance that he or she 'knows or has reason to believe' that the visa applicant has done something fitting within the proscribed category constitutes a facially legitimate reason").

Finally, as a matter of interpretation, to the extent that the protected liberty interests of a U.S. citizen lie behind a *Mandel* challenge, a statute preventing the court from determining whether the government had a facially legitimate and bona fide reason for impinging on those interests would raise serious constitutional questions. The Supreme Court has consistently interpreted immigration statutes so as to avoid raising such questions. *E.g.*, *I.N.S. v. St. Cyr.*, 533 U.S. 289, 300 (2001) (concluding that "[a] construction of the amendments at issue that would entirely preclude review of a pure question of law by any court would give rise to substantial constitutional questions" and noting that "where an alternative interpretation of the statute is fairly possible … we are obligated to construe the statute to avoid such problems") (citations omitted); *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001) (construing statute to avoid

constitutional invalidation); *see also* Henry M. Hart, *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 Harv. L. Rev. 1362, 1380-1383 (1953); *see also Brief of Professors In Support of Fauzia Din as Amicus Curiae*, at 27-29, *Cardenas v. United States*, 826 F.3d 1164 (9th Cir. 2016).

Thus, § 1182(b)(3) also cannot be interpreted to prohibit courts reviewing visa applications from requiring an explanation sufficient to allow for judicial review. *Cf. Delgado v. Holder*, 648 F.3d 1095, 1107-08 (9th Cir. 2011) (en banc) ("Without knowing the basis of the Board's decision, we cannot conduct a meaningful review.") Given the need for such review in the context of adjustment of status applications, section 1182(b)(3) must be interpreted to accommodate otherwise permissible *Mandel* review of consular decisions in order to provide consistent treatment of the same statutory language.

> **6.** **The Government's Violation Of The Rule In *Mandel*, *Din*, And *Cardenas* Violates Plaintiffs' Fundamental Right To Marriage Because It Is Neither Narrowly Tailored Nor Rationally Related To Meeting the Government's Interest**

Two weeks after issuing his concurrence in *Din*, Justice Kennedy wrote the opinion in *Obergefell v. Hodges*, explaining that "the right to marry is a fundamental right inherent in the liberty of the person…" *See* 135 S.Ct. 2584, 2604 (2015). This affirmed the Supreme Court's decision in *Loving v. Virginia* establishing, "[t]he

freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men. Marriage is one of the basic civil rights of man, fundamental to our very existence and survival." *See* 388 U.S. 1, 10 (1967). Even though the government may impose reasonable regulations on marriage, the Supreme Court has applied a strict scrutiny test when regulations "interfere directly and substantially with the right to marry." *Zablocki v. Redhail*, 434 U.S. 374, 387 (1978). To satisfy strict scrutiny, a regulation must be "narrowly tailored" to achieve a "compelling" government interest." *United States v. Windsor*, 133 S.Ct. 2675, 2686 (2013). In order to be "narrowly tailored," a regulation must be devoid of "less restrictive alternatives." *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 784 (2007).

Defendants' efforts to establish a new rule whereby they are not required to give discrete factual predicates as required by *Mandel*, *Din*, and *Cardenas* for denying Plaintiff's immigrant visa violates this standard. Defendants' rule would not even pass rational basis review. Defendants' failure to cite a discrete fact with the statute does not bear a rational relationship to the government interest in monitoring borders and adjudicating visa applications. The Government's interest is in following its own standards and faithfully and honestly adjudicating visa applications on the merits pursuant to the law. Defendants' new rule removes the requirement that consular officers point to discrete facts to justify visa denials; it does not heighten the risk that

officials will erroneously grant admission to dangerous persons. Under a strict scrutiny analysis the lack of connection between the Defendants' new rule and their interest is even clearer. Under *Mandel, Din,* and *Cardenas,* all the government must do is cite a statute with discrete factual predicates. This existing standard is the less restrictive alternative. Defendants have failed to follow the proper rule here.

As a result, Defendants have substantially and directly blocked Plaintiffs from exercising their fundamental right to marriage by preventing Plaintiff Asencio-Cordero from obtaining an immigrant visa for which he is eligible. Defendants' actions are the sole reason why this loving couple is unable to enjoy their marriage with one another. To claim Plaintiffs can substantially exercise their fundamental right to marriage when one spouse is banished from the United States and forced to live thousands of miles from home would be to significantly erode the fundamental right to marriage into nothing more than the "right" to possess a marriage license.

**B.** **This Court Should Deny Defendants' Motion Because the Permanent Visa Denial Was Conducted In Bad Faith**

Even if the Court finds that 8 U.S.C § 1182(a)(3)(A)(ii) offers a discrete factual predicate, Plaintiffs can still "look behind" the visa denial because Defendants conducted the visa process in bad faith.

The Restatement definition of "bad faith" reads:

> A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of power to specify terms, and interference with or failure to cooperate in the other party's performance.

Restatement (Second) of Contracts § 205 cmt. d (1979). To make an affirmative showing of bad faith, Justice Kennedy explained in *Din* that a plaintiff must "plausibly allege [bad faith] with sufficient particularity." *Din* at 2140-41.

In *Cardenas,* the Ninth Circuit ruled against a plaintiff alleging bad faith. There, the Ninth Circuit explained that no bad faith could occur where the consular officer both informed the plaintiff's spouse of what type of unlawful activity they suspected him of committing under § 1182(a)(3)(A)(ii) and also gave the plaintiff's spouse "the opportunity to argue that he had no ties to the Sureno gang." *Cardenas* at 1172.

Under the rule set forth in *Cardenas*, the Plaintiffs in the instant case can affirmatively show bad faith. At no point in the process did consular officials inform Mr. Asencio-Cordero of the type of unlawful activity they suspected him of committing under § 1182(a)(3)(A)(ii).   At no point did consular officials provide Plaintiff with "the opportunity to argue" or present evidence on his behalf to dispute an

allegation or suspicion.  During his interviews, consular officers never gave Plaintiff any indication that they suspected him of committing unlawful activity.  He was as bound as a defendant before a king's Star Chamber, never informed of the charges against him and never given the opportunity to argue on his own behalf.

In *Cardenas*, as here, an applicant's ability to attack the logic behind the consular officer's denial is limited, provided the officer has informed him or her of the unlawful activity they are suspected of committing. The doctrine of consular non-reviewability prevents applicants from "looking behind" the decision to question the officers' reasoning. As the *Cardenas* court explained, the fact "that the consular officer did not accept [the applicant's] documents does not show bad faith." *Id*.

Here, the issue is not whether an applicant can second-guess the consular officers' decision-making process. The question is whether the consular officers gave the petitioner the opportunity to present an argument in his defense as it related to specific allegations of unlawful conduct. In *Cardenas*, consular officers gave the applicant such an opportunity. In the present case, however, Plaintiffs had no idea what unlawful activity Mr. Asencio-Cordero was suspected of having committed, and, like a character in a Kafka novel, could not argue on his own behalf.  Certifying this type of conduct is a legal Rubicon that no court has thus far crossed.

The Defendants' Motion to Dismiss mischaracterizes Plaintiffs' bad faith argument by asserting that Plaintiffs have merely asserted "the consular official's

information was incorrect." (Mot. to Dismiss, lines 2 - 5 at 13.) Plaintiffs do not assert the consular officer had incorrect information; they assert that the consular officers had *correct* information—i.e., that Plaintiff had no criminal record and that there was no factual basis for the assumption he had or would commit unlawful activity. The Plaintiffs allege Defendants had no basis for their decision and that they in bad faith refused to provide a reason for the denial in order to deny Plaintiff the opportunity to respond to a tentative finding of any sort.

Here, the Plaintiffs can describe with particularity facts which seriously call into question whether the stated reason for the challenged action was provided in good faith.

Foreign Affairs Manual Rule 9 FAM 301.2-2 states: "All visa applications must be adjudicated—that is, each case must be refused or approved in accordance with U.S. law, regulations and policy documents." However, Defendants' refusal to give Mr. Asencio-Cordero the opportunity to know what criminal activity he was suspected of having committed calls into question whether his application was ever adjudicated, or whether it was simply rejected without any attention to the law or regulations.

9 FAM 301.102(3) reads: "The visa adjudicator is required to make a determination based upon facts or circumstances that would lead a reasonable person to conclude that the applicant is ineligible to receive a visa as provided in the INA and as implemented by the regulations." By ignoring Plaintiffs' repeated requests for an

explanation as to what type of unlawful activity Mr. Asencio-Cordero is suspected of

having committed, Defendants are calling into question whether the visa denial was

based on any facts and circumstances pointing to Plaintiff's ineligibility. In the instant

case, Mr. Asencio-Cordero has no criminal record or gang affiliation. Defendants have

failed to point to any event in Plaintiff's history to indicate he may commit crimes if

granted admission to the U.S.

      If this Court finds no bad faith in the instant case, they will be establishing a

new rule, contradicting *Cardenas* and *Din*, and will give the government a blank check

to deny all applications under the broad "any other unlawful activity" reason in § 1182

(a)(3)(A)(ii) without giving applicants any opportunity to either know what unlawful

activity they are alleged to have committed or to rebut a tentative concern. Such a

ruling would turn the doctrine of consular non-reviewability into the doctrine of

unchallengeable consular *pollice verso*.[3]

**C.**     **This Court Should Deny Defendants' 12(b)(1) Claim In Its Motion**

        **To Dismiss Because This Court Has Subject Matter Jurisdiction**

        **Over This Case**

---

[3] *Pollice verso* is a Latin phrase, meaning "with a turned thumb", that was used in the context of gladiatorial combat. It referred to the hand gesture or thumbs signal used by Ancient Roman crowds to pass judgment on a defeated gladiator. Wikipedia, the Free Encyclopedia, *Pollice verso or verso pollice* at https://en.wikipedia.org/wiki/Pollice_verso (last visited October 16, 2017).

Despite the "long recognized power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control, courts have identified an exception to the doctrine of consular non-reviewability where the denial of a visa implicates the constitutional rights of American Citizens." *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008). Under the Due Process Clause, *Mandel* judicial review is available when a citizen's spouse is denied a visa. *Id.*

Ms. Muñoz is a United Citizen who has a protected liberty interest in her marriage that "gives rise to a right to constitutionally adequate procedures in the adjudication of her husband's visa application." *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008); *See Kleindienst v. Mandel*, 408 U.S. 753, 770 (1972). Before exiling her husband from her country of citizenship, Ms. Muñoz is entitled to judicial review for the denial of Mr. Asencio-Cordero's application where no factual basis has been provided in support of the decision to deny.

**D.**   **The Government's Motion To Dismiss Does Not Address Plaintiffs' Count III Respecting Separation Of Powers. Therefore, The Motion To Dismiss Should Be Denied Respecting This Count**

The Government has failed to address the Plaintiffs' Separation of Powers Count III in their motion. Accordingly, Defendants' Motion to Dismiss does not apply to said Count and the motion should, therefore, be denied with respect this claim.

## V.     CONCLUSION

The doctrine of consular non-reviewability does not extend so far as to safeguard consular officers from providing a factual reason for denying an application for admission for lawful entry to the U.S. when citing 8 U.S.C. § 1182(a)(3)(A)(ii). The government's claim that the Complaint should be dismissed for failure to state a cognizable claim pursuant to Fed. R. Civ. P. 12(b)(6) should therefore be denied. Moreover, judicial review is available when a citizen's spouse is denied an immigrant visa. Accordingly, this Court should deny Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

For the foregoing reasons, Plaintiffs SANDRA MUÑOZ and LUIS ERNESTO ASENCIO-CORDERO respectfully request that the Court deny Defendants' Motion to Dismiss in its entirety.

Dated:        October 23, 2017        Respectfully submitted,


By: _/s/ Alan R. Diamante___
Alan R. Diamante
adiamante@alandiamantelaw.com
Law Office of Alan R. Diamante, APLC
510 West 6th St., Suite 506
Los Angeles, CA 90014
Telephone: (213) 943-4555