1

2

3

4

5

6

7

8                        **UNITED STATES DISTRICT COURT**

9                 **CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION**

10

| | |
|---|---|
| 11   SANDRA MUÑOZ and LUIS ERNESTO ASENCIO-CORDERO, | CASE NO. CV 17-0037 AS |
| 12 | |
| 13                     Plaintiffs, | **ORDER DENYING MOTION TO DISMISS** |
| 14        v. | |
| 15   UNITED STATES DEPARTMENT OF STATE, et al., | |
| 16                     Defendants. | |

17

18                              **INTRODUCTION**

19

20       On January 3, 2017, Sandra Muñoz ("Muñoz") and Luis Ernesto

21  Asencio-Cordero ("Asencio" and collectively, "Plaintiffs") filed

22  a Complaint for Declaratory Relief ("Complaint") against the U.S.

23  Department of State ("DOS"), John F. Kerry, the U.S. Secretary of

24  State, and Mark Leoni, the U.S. Consul General in San Salvador,

25  El Salvador ("Defendants"), challenging the denial of Asencio's

26  visa application.  (Dkt. No. 1).  The parties have consented to

27  the jurisdiction of the undersigned United States Magistrate

28  Judge, pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 25, 27, 29).

1    On September 29, 2017, Defendants filed a Motion to Dismiss

2    ("Motion") pursuant to Federal Rules of Procedure 12(b)(1) and

3    12(b)(6). (Dkt. No. 37). On October 23 and 24, 2017, Plaintiffs

4    filed an Opposition to the Motion ("Opp'n"). (Dkt. Nos. 39, 40;

5    see Dkt. Nos. 41-43). On November 9, 2017, Defendants filed a

6    Reply ("Reply"). (Dkt. No. 46). On December 6, 2017, the Court

7    conducted a hearing on the Motion, heard argument from the

8    parties and took the matter under submission.

9

10    For the reasons set forth below, the Motion is DENIED.

11

12                         **PLAINTIFFS' ALLEGATIONS**

13

14    Asencio is a native and citizen of El Salvador, who arrived

15    in the United States in March 2005. (¶ 15).[1] In July 2010, he

16    married Muñoz, who is a U.S. citizen by birth. (¶ 16). In April

17    2015, Asencio departed the United States to pursue an immigration

18    visa with the DOS, based on the approved immigrant relative

19    petition that Muñoz filed.[2] (¶¶ 3, 18). In May 2015, Asencio

20    had an initial interview with the U.S. Consulate in El Salvador.

21    (¶ 19).

22

23    _____

24    [1]    All citations to Plaintiffs' factual allegations are to the
relevant paragraph numbers in the Complaint.

25    [2]    Immigrating to the United States is typically a two-step
process. First, the person sponsoring the foreign national files a
26    petition with the U.S. Citizenship and Immigration Service ("USCIS").
22 C.F.R. § 42.41. If the petition is approved, the USCIS forwards it
27    to the respective U.S. consulate for the requisite visa interview. Id.
§ 42.62.
28

On December 28, 2015, the Consular Section denied Asencio's visa application. (¶ 20).  Asencio was denied lawful permanent residence status on the grounds that he was inadmissible pursuant to 8 U.S.C. § 1182(a)(3)(A)(ii), which states that "[a]ny alien who a consular officer or the Attorney General knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in . . . any other unlawful activity" is ineligible to receive a visa and is ineligible to be admitted to the United States. (¶ 22).  Muñoz contacted Congresswoman Judy Chu, who sent a letter on Muñoz's behalf to the DOS on January 20, 2016. (¶ 23).  Consul Landon R. Taylor responded to Chu's letter on January 21, 2016, citing § 1182(a)(3)(A)(ii), but provided no specific facts for finding Asencio inadmissible. (¶ 24). (Id.).  In April 2016, the Consulate forwarded the case to the immigration visa unit for review. (¶ 26).  On April 13, 2016, Taylor reported to Plaintiffs: "the finding of ineligibility for [Asencio] was reviewed by the [DOS], which concurred with the consular officer's decision.  Per your request, our Immigration Visa Unit took another look at this case, but did not change the decision." (¶ 28).  Plaintiffs wrote to the Office of Inspector General for the DOS, requesting that a reason be given for the inadmissibility decision. (¶ 30).  On May 18, 2016, Christine Parker, the Chief of the Outreach and Inquiries Division of Visa Services at the DOS, stated that the DOS "concurred in the finding of ineligibility." (¶ 33).

1                          **STANDARD OF REVIEW**

2

3       A Rule 12(b)(6) motion to dismiss for failure to state a

4  claim should be granted if a plaintiff fails to proffer "enough

5  facts to state a claim to relief that is plausible on its face."

6  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Ashcroft v.

7  Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial

8  plausibility when the plaintiff pleads factual content that

9  allows the court to draw the reasonable inference that the

10 defendant is liable for the misconduct alleged." Iqbal, 556 U.S.

11 at 678; Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114,

12 1121-22 (9th Cir. 2013). Although a plaintiff must provide "more

13 than labels and conclusions, and a formulaic recitation of the

14 elements of a cause of action will not do," Twombly, 550 U.S. at

15 555; Iqbal, 556 U.S. at 678, "[s]pecific facts are not necessary;

16 the [complaint] need only give the defendant[s] fair notice of

17 what the . . . claim is and the grounds upon which it rests,"

18 Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam)

19 (citations and internal quotation marks omitted); Twombly, 550

20 U.S. at 555.

21

22      In considering whether to dismiss a complaint, the Court

23 must accept the allegations of the complaint as true, Erickson,

24 551 U.S. at 93-94; Albright v. Oliver, 510 U.S. 266, 267 (1994),

25 construe the pleading in the light most favorable to the pleading

26 party, and resolve all doubts in the pleader's favor, Jenkins v.

27 McKeithen, 395 U.S. 411, 421 (1969); Berg v. Popham, 412 F.3d

28 1122, 1125 (9th Cir. 2005). The Court "need not accept as true

4

allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2006). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

**DISCUSSION**

**A.   Doctrine of Consular Nonreviewability**

The Supreme Court has "long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." Fiallo v. Bell, 430 U.S. 787, 792 (1977) (citation omitted). "The Court without exception has sustained Congress' plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." Kleindienst v. Mandel, 408 U.S. 753, 766 (1972) (citation omitted). "When Congress delegates this plenary power to the Executive, the Executive's decisions are likewise generally shielded from administrative or judicial review." Andrade-Garcia v. Lynch, 828 F.3d 829, 834 (9th Cir.

2016); see U.S. ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").

"Despite these rulings, 'courts have identified a limited exception to the doctrine of consular nonreviewability where the denial of a visa implicates the constitutional rights of American citizens.'" Andrade-Garcia, 828 F.3d at 834 (quoting Bustamante v. Mukasey, 531 F.3d 1059, 1061 (9th Cir. 2008)) (alteration omitted).  This limited exception traces to the Mandel decision. Dr. Ernest Mandel was a Belgian journalist and a self-described revolutionary Marxist, who had been invited by college professors, all of them U.S. citizens, to speak at a university conference.  Mandel, 408 U.S. at 756-57.  The consulate denied Mandel's visa application, finding him inadmissible under the immigration laws at that time, which barred aliens who advocate world communism, and the Attorney General declined to grant a waiver.  Id. at 757; see Cardenas v. United States, 826 F.3d 1164, 1169 (9th Cir. 2016).  Mandel, along with a number of American professors, challenged the denial.  Mandel, 408 U.S. at 759-60.  While the Supreme Court ruled that "Mandel personally, as an unadmitted and nonresident alien, had no constitutional right of entry," the Court found that the denial of Mandel's visa implicated the professors' First Amendment rights to receive ideas.  Id. at 762, 765-66.  Nevertheless, the Supreme Court "declined to balance the First Amendment interest of the professors against 'Congress' plenary power to make rules for the admission of aliens and to exclude those who possess those

6

characteristics which Congress has forbidden.' "  Kerry v. Din,
135 S. Ct. 2128, 2139 (2015) (Kennedy, J., concurring) (quoting
Mandel, 408 U.S. at 766) (other citation omitted).  Instead the
Mandel Court "limited its inquiry to the question whether the
Government had provided a 'facially legitimate and bona fide'
reason for its action." Din, 135 S. Ct. at 2140; see Mandel, 408
U.S. at 770 ("We hold that when the Executive exercises this
power negatively on the basis of a facially legitimate and bona
fide reason, the courts will neither look behind the exercise of
that discretion, nor test it by balancing its justification
against the First Amendment interests of those who seek personal
communication with the applicant.").

    The Supreme Court recently returned to the nonreviewability
issue in Din. Fauzia Din, a U.S. citizen, was married to
Kanishka Berashk, an Afghan citizen and former civil servant in
the Taliban regime.  Din, 135 S. Ct. at 2131.  The consulate
denied Berashk's visa application, finding him inadmissible under
8 U.S.C. § 1182(a)(3), a "statutory provision prohibiting the
issuance of visas to persons who engage in terrorist activities,"
"but provided no further explanation." Id. at 2132, 2139.  The
Din concurrence "assumed without deciding that Din's
constitutional rights were burdened by the visa denial, but held
that the reasons for the visa denial given by the Government
satisfied Mandel's 'facially legitimate and bona fide' standard."
Cardenas, 826 F.3d at 1170 (9th Cir. 2016) (citing Din, 135 S.
Ct. at 2140); see Int'l Refugee Assistance Project v. Trump, 857
F.3d 554, 589 (4th Cir.), as amended (May 31, 2017), as

1   amended (June 15, 2017), cert. granted, 137 S. Ct. 2080 (2017),

2   and vacated and remanded on other grounds, No. 16-1436, 2017 WL

3   4518553 (U.S. Oct. 10, 2017) ("Courts have continuously applied

4   Mandel's 'facially legitimate and bona fide' test to challenges

5   to individual visa denials."); Am. Acad. of Religion v.

6   Napolitano, 573 F.3d 115, 125 (2d Cir. 2009) ("We conclude that,

7   where a plaintiff, with standing to do so, asserts a First

8   Amendment claim to have a visa applicant present views in this

9   country, we should apply Mandel to a consular officer's denial of

10  a visa."); see also Cardenas, 826 F.3d at 1171-72 (determining

11  that the Kennedy concurrence in Din "represents the holding of

12  the Court").

13

14  **B.    Analysis**

15

16      **1.    The Doctrine Of Consular Nonreviewability Precludes**

17          **Asencio From Obtaining Judicial Review**

18

19      Defendants argue that Asencio has no right to judicial

20  review of his visa denial. (Motion at 4). The Court agrees. As

21  an unadmitted and nonresident alien, Asencio has no right to

22  judicial review of the visa denial at issue. See Din, 135 S. Ct.

23  at 2131 ("[B]ecause Berashk is an unadmitted and nonresident

24  alien, he has no right of entry into the United States, and no

25  cause of action to press in furtherance of his claim for

26  admission."); Mandel, 408 U.S. at 762 ("It is clear that Mandel

27  personally, as an unadmitted and nonresident alien, had no

28  constitutional right of entry to this country as a nonimmigrant

8

or otherwise."). In their Opposition, Plaintiffs do not address Defendants' argument and, thus, have waived the issue. Zaklit v. Glob. Linguist Sols., LLC, No. CV 13-8654, 2014 WL 12521725, at *13 (C.D. Cal. Mar. 24, 2014) (failure of party in its opposition brief to address argument waives the issue).

**2.   The Court Has Subject Matter Jurisdiction Over This Case**

Defendants contend that the Court lacks subject matter jurisdiction over this case. (Motion at 9). Rule 12(b)(1) authorizes a court to dismiss a complaint for lack of subject matter jurisdiction. "An attack on subject matter jurisdiction may be facial or factual." Edison v. United States, 822 F.3d 510, 517 (9th Cir. 2016); Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." Edison, 822 F.3d at 517 (citation omitted).

Despite the "long recognized . . . power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control," Cardenas, 826 F.3d at 1169, "courts have identified a limited exception to the doctrine where the denial of a visa

1    implicates the constitutional rights of American citizens,"
2    _Bustamante_, 531 F.3d at 1061.   "[U]nder _Mandel_, a U.S. citizen
3    raising a constitutional challenge to the denial of a visa is
4    entitled to a limited judicial inquiry regarding the reason for
5    the decision."  _Bustamonte_, 531 F.3d at 1062.   A U.S. citizen
6    "has a protected liberty interest in her marriage that gives rise
7    to a right to constitutionally adequate procedures in the
8    adjudication of her husband's visa application."   _Id._   Thus,
9    because Muñoz is entitled to judicial review for the denial of
10   Asencio's visa application, the Complaint sufficiently invokes
11   federal jurisdiction.[3]

12

13        **3.   The Government Failed To Provide A Bona Fide Factual**
14             **Reason For Denying Asencio's Visa Application**

15

16        While the government's denial of a visa to Asencio
17   implicates Muñoz's protected liberty interest in her marriage,
18   the Court's review "is limited to ensuring that the decision was
19   supported by a 'facially legitimate and bona fide reason.' "
20   _Cardenas_, 826 F.3d at 1167 (quoting _Mandel_, 408 U.S. at 770).
21   _Din_ laid out a two-part test for determining whether the denial
22   of a visa to the spouse of a U.S. citizen provides the "facially
23   legitimate and bona fide reason" required by _Mandel_.   _See_
24   _Cardenas_, 826 F.3d at 1172 ("Under the _Din_ concurrence, the
25   facially legitimate and bona fide reason test has two

26   _____
27        [3]   Defendants conceded at the hearing, that as a U.S. citizen,
     Munoz was entitled to judicial review of the denial of her husband's
28   visa application.

components."). "First, the consular officer must deny the visa under a valid statute of inadmissibility." Id.; see Din, 135 S. Ct. at 2140 (consular officer's citation to § 1182(a)(3)(B) "suffices to show that the denial rested on a determination that Din's husband did not satisfy the statute's requirements," and "the Government's decision to exclude an alien it determines does not satisfy one or more of [the statutory conditions for entry] is facially legitimate under Mandel"). "Second, the consular officer must cite an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,' or there must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." Cardenas, 826 F.3d at 1172 (quoting Din, 135 S. Ct. at 2141).

Plaintiffs acknowledge that the consular officer's citation to § 1182(a)(3)(A)(ii) was sufficient to demonstrate that the visa denial relied on a valid statute of inadmissibility. (Opp'n at 6-7); see Din, 135 S. Ct. at 2140 (consular officer's citation to § 1182(a)(3)(B) "suffices to show that the denial rested on a determination that Din's husband did not satisfy the statute's requirements"); Cardenas, 826 F.3d at 1172 ("The consular officer gave a facially legitimate reason to deny Mora's visa because he cited a valid statute of inadmissibility, § 1182(a)(3)(A)(ii)."). Plaintiffs contend, however, that the mere citation to § 1182(a)(3)(A)(ii) fails to provide the "discrete factual predicates" necessary to deny a visa. (Opp'n at 7). The Court agrees.

Defendants contend that the consular officer's citation to § 1182(a)(3)(A)(ii) provides the "facially legitimate and bona fide reason" required by Mandel. (Reply at 2-3). Defendants argue that "Plaintiffs mistakenly read a two-part test into Din that does not exist." (Id. at 3). However, Din requires both a "facially legitimate" reason and a "bona fide factual basis" for denying a visa. 135 S. Ct. at 2140-41. The Ninth Circuit has explicitly held that satisfying the second part of the Din test requires either a citation to "an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,' or there must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." Cardenas, 826 F.3d at 1172 (quoting Din, 135 S. Ct. at 2141).

The Court finds that § 1182(a)(3)(A)(ii) does not provide the "discrete factual predicates" necessary to deny a visa because the statute merely precludes admission, without further edification, to an alien who a consular officer "knows, or has reasonable ground to believe, seeks to enter the United States to engage . . . in . . . any other unlawful activity." 8 U.S.C. § 1182(a)(3)(A)(ii). Defendants contend that "this ground is far narrower" than § 1182(a)(3)(B), which the Din court found to provide the requisite "discrete factual predicates." (Reply at 4-5). Section 1182(a)(3)(B) proscribes admission to an alien who a consular officer believes will engage in "terrorist activities." But paragraph (B) includes literally dozens of subparagraphs that describe in detail what "terrorist activity,"

12

"engag[ing] in terrorist activity," and "terrorist organization"
entail.  See Chehade v. Tillerson, --- F. App'x ---. No. 16-
55236, 2017 WL 4966863, at *1 (9th Cir. Oct. 27, 2017) ("Because
'§ 1182(a)(3)(B) specifies discrete factual predicates the
consular officer must find to exist before denying a visa,' it is
not necessary for there to also be a fact in the record providing
a facial connection to the statutory ground of inadmissibility.")
(quoting Din, 135 S.Ct. at 2141).  In contrast, paragraph (A)
provides no such factual predicates for what "unlawful activity"
entails.  Indeed, almost anything, including parking violations,
jay walking, or driving without a seatbelt, could be included
within the ambit of "unlawful activities."  Thus, paragraph (A)
grants the consular officer "nearly unbridled discretion," which
the Mandel and Din courts cautioned against.  See Din, 135 S. Ct.
at 2140-41 ("But unlike the waiver provision at issue in Mandel,
which granted the Attorney General nearly unbridled discretion,
§ 1182(a)(3)(B) specifies discrete factual predicates the
consular officer must find to exist before denying a visa."); see
also Cardenas, 826 F.3d at 1172 ("[T]here must be a fact in the
record that 'provides at least a facial connection to' the
statutory ground of inadmissibility.") (quoting Din, 135 S. Ct.
at 2141).

     Defendants, however, insist that because "§
1182(a)(3)(A)(ii) is the *same* section that the Ninth Circuit in
Cardenas determined was 'facially legitimate' for the visa
refusal in that case," (Reply at 5) (emphasis in original), the
citation to that provision, alone, provides the facial

13

connections and no more is needed. But this case is distinguishable from Cardenas, in which the consular officer "provided a 'facial connection' to the statutory ground of inadmissibility: the belief that Mora was a 'gang associate' with ties to the Sureno gang." 826 F.3d at 1172. Defendants' argument that the consular officer *necessarily* had a factual basis for believing that Ascencio-Cordero was seeking to enter the United States to engage in unlawful activity by citing to § 1182(a)(3)(A)(ii) finds no support in the available case law. See Morfin v. Tillerson, 851 F.3d 710, 714 (7th Cir. 2017), cert. denied, No. 17-98, 2017 WL 3136962 (U.S. Oct. 30, 2017) (any due process right alien's wife had to an explanation of the grounds for denial of alien's visa request was satisfied by consular officer's explanation that there was reason to believe alien trafficked in cocaine); Hazama v. Tillerson, 851 F.3d 706, 709-10 (7th Cir. 2017) (consular officer's decision to deny alien's visa application on ground that alien previously engaged in terrorist acts was facially legitimate and bona fide, as it was undisputed that when alien was 13 years old he threw rocks at armed Israeli soldiers); Allen v. Milas, No. 15 CV 0705, 2016 WL 704353, at *3 (E.D. Cal. Feb. 23, 2016) ("[T]he consular office determined that she was ineligible for a visa . . . because she was convicted in a German court of theft . . . [and] for illicit acquisition of narcotics."); cf. Singh v. Tillerson, --- F. Supp. 3d ----, No. CV 16-922 (CKK), 2017 WL 4232552, at *6 (D.D.C. Sept. 21, 2017) (Any fifth amendment right spouse and father had to review denial of visa requests satisfied by consular officer's explanation that each child was "found ineligible to receive an immigrant visa"

under 8 U.S.C. § 1182(a)(6)(C)(i), which prohibits a visa to anyone who has tried to obtain one by fraudulent means or misrepresentation.   Plaintiff's wife was also found ineligible for an immigrant visa, pursuant to 8 U.S.C. § 1182(a)(6)(E), on grounds that she made material misrepresentations for the purpose of aiding and abetting aliens who were trying to enter the United States.); Santos v. Lynch, No. 15 CV 0979, 2016 WL 3549366, at *4 (E.D. Cal. June 29, 2016) ("Even if the Court was to find that Plaintiff stated a liberty interest in living in the United States as an adult child with her parents, Plaintiff has failed to allege that the reasons offered by the consular official for denying her parents' visa applications were not facially legitimate and bona fide. . . . Here, the consular officer . . . determined that they were ineligible for visas . . . because they lived unlawfully in the United States for a period exceeding 1 year. The consular officer also denied Mr. Santos's visa application . . . because as an alien, Mr. Santos knowingly encouraged, induced, assisted, abetted, or aided an alien to enter or to try to enter the United States in violation of law.").   Here, neither the consular officer nor the DOS has identified any fact in the record that provides a facial connection to § 1182(a)(3)(A)(ii). (Compl. ¶¶ 5, 6, 22, 24, 33). Accordingly, the Court finds that the government has failed to provide a bona fide factual reason for denying Asencio's visa application.[4]

_____

[4] Defendants contend that pursuant to 8 U.S.C. § 1182(b)(3), "a consular officer is not required to provide an explanation of an

### 4.   Bad Faith

Plaintiffs contend that even if the Court were to find that the mere citation to § 1182(a)(3)(A)(ii) was a bone fide reason for denying Asencio's visa application, Plaintiffs have plausibly alleged bad faith on the part of the consular officer who denied the visa. "Once the government has made [a bona fide] showing, the plaintiff has the burden of proving that the reason was not bona fide by making an 'affirmative showing of bad faith on the part of the consular officer who denied [ ] a visa.' " <u>Cardenas</u>, 826 F.3d at 1172 (quoting <u>Din</u>, 135 S. Ct. at 2141).  To make an affirmative showing of bad faith, a plaintiff must "plausibly allege[ bad faith] with sufficient particularity." <u>Din</u>, 135 S. Ct. at 2141.

Here, Asencio denies ever being associated with a criminal gang.  (Compl. ¶ 20).  While he has "multiple tattoos," he submitted testimony from an expert witness, who opined that Asencio does not "have any tattoos that are representative of any known criminal street gang."  (<u>Id.</u> ¶ 21; <u>see</u> <u>id.</u> ¶ 30). Plaintiff contends that despite this evidence, the consular official rejected Asencio's visa application, finding that he means to enter the United States with the intent to engage in

---

alien's visa denial if it is premised on the alien's inadmissibility on criminal or security-related grounds." (Reply at 5 n.2; <u>see</u> Motion at 7).  But paragraph (b) merely precludes disclosure of "the specific provision or provisions of *law* under which the alien is inadmissible." 8 U.S.C. § (b)(1)(B) (emphasis added).  Here, Plaintiffs are seeking the *factual* predicates for the denial, as required by the Supreme Court in <u>Mandel</u> and <u>Din</u>.

1   "unlawful activity."   (Id. ¶ 4).   The official's failure to
2   identify any information contrary to the expert's statements
3   calls into question whether the visa denial was based on any
4   factual predicates.

5

6       In Cardenas, the court found no plausible allegations of bad
7   faith given that the visa applicant was both informed of the
8   specific unlawful activity the consular official was concerned
9   about and "given the opportunity to argue that he had no ties to
10  the Sureno gang." 826 F.3d at 1172.   Here, the consular official
11  neither informed Asencio of the specific "unlawful activity" he
12  intended to engage in nor provided him with the "opportunity to
13  argue" otherwise.

14

15      Defendants argue that Plaintiffs' bad faith argument is
16  "nothing more than unsubstantiated speculation," and request that
17  "this Court do precisely that which the doctrine of consular
18  unreviewability precludes: to 'look behind' the visa refusal for
19  the factual details." (Reply at 6).   Defendants are mistaken.
20  The issue is not whether Plaintiffs are entitled to "look behind"
21  the visa refusal or second-guess the consular official's decision
22  -- they are not; instead, the question is whether the consular
23  official's given reason for denying the visa application --
24  suspicion of unlawful activity -- was his true, bona fide reason.
25  Bustamante, 531 F.3d at 1062.

26

27      At the hearing, both parties agreed that if the Court found
28  that the government's denial of Asencio-Cordero's visa

17

1   application was not supported by a facially legitimate and bona

2   fide reason, the Court need not make a finding regarding bad

3   faith.    Given the Court's finding that Defendants have not

4   provided a bona fide reason for denying Asencio's visa. see

5   Macias v. Kerry, No. 13 CV 0201, 2013 WL 3807891, at *5 (S.D.

6   Cal. July 18, 2013) ("Unlike the plaintiff in Bustamante, there

7   are no factual allegations that the government relied upon

8   evidence" to conclude that the visa applicant was a drug

9   trafficker. "Under the facts of this case, the Court is not

10  prepared to make the bona fide inquiry an impossible hurdle for

11  the plaintiffs to state a claim."), the Court finds it

12  unnecessary to address whether, at this stage of the proceedings,

13  Plaintiff have plausibly alleged bad faith with sufficient

14  particularity.

15

16                          **CONCLUSION**

17

18      Defendants' Motion to Dismiss is DENIED.  Defendants are

19  ordered to Answer the Complaint within 14 days of the date of

20  this Order.

21

22  DATED: December 11, 2017.

23

24                                    /S/
                                  ALKA SAGAR
25                      UNITED STATES MAGISTRATE JUDGE

26

27

28