Alan Diamante CBN#180149
LAW OFFICE OF ALAN R. DIAMANTE, APLC
510 W. 6th St. Suite 506
Los Angeles, CA 90014
(213) 943-4555
Attorney for Petitioners

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUÑOZ, Sandra;<br>ASENCIO-CORDERO, Luis Ernesto<br><br><br>        Plaintiff,<br>          v.<br><br>UNITED STATES DEPARTMENT OF STATE; REX W. TILLERSON, United States Secretary of State; Mark LEONI, United States Consul General, San Salvador, El Salvador.<br><br><br>        Defendants. | ) Case No. 2:17-cv-37<br>)<br>) **PLAINTIFF'S NOTICE OF**<br>) **MOTION AND MOTION FOR**<br>) **JUDGMENT ON THE**<br>) **PLEADINGS; MEMORANDUM**<br>) **OF POINTS AND**<br>) **AUTHORITIES**<br>)<br>)<br>)<br>)<br>)<br>) **DATE:** May 10, 2018<br>) **TIME:** 10:00 a.m.<br>) **HON. ALKA SAGAR**<br>)<br>) |

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS        1

1
2

**NOTICE OF MOTION AND PLAINTIFF'S MOTION**
**FOR JUDGMENT ON THE PLEADINGS**

3
4

NOTICE IS HEREBY GIVEN that Plaintiff will on Thursday, May 10,

5

2018 at 10:00 a.m or as soon thereafter as counsel may be heard, submit this

6

motion for judgment on the pleadings before the Honorable Alka Sagar, United

7

States Magistrate Judge, at the Roybal Federal Building and United States

8
9

Courthouse, 255 E. Temple St., Los Angeles, CA 90012, Courtroom 540, 5th Floor.

10

Plaintiff moves this court to grant Plaintiff's Motion for Judgment on the Pleadings

11

under Federal Rule of Civil Procedure 12(c).

12
13

Plaintiff bases this motion upon this notice, the accompanying memorandum

14

of points and authorities, all pleadings and papers on file in this action, this Court's

15

previous rulings, and any such other matter as they may present to the Court at the

16

time of the hearing. This motion is made following the conference of counsel

17
18

pursuant to L.R. 7-3, which took place by phone during the week of February 18,

19

2018.

20

Dated: April 4, 2018                     Respectfully submitted,

21
22

By: /s/ Alan R. Diamante

23

adiamante@alandiamantelaw.com
Law Office of Alan R. Diamante,

24

APLC 510 West 6th St., Suite 506

25

Los Angeles, CA 90014
Telephone: (213) 943-4555

26
27

1
2

# TABLE OF CONTENTS

I.    INTRODUCTION & BACKGROUND………................................1

II.   LEGAL STANDARD...................................................................2

III.  LEGAL ARGUMENT..................................................................2

      A.    Plaintiff Is Entitled To Judgment As A Matter Of Law Because Defendants Failed To Provide A Bona Fide Factual Reason For Denying Mr. Asencio-Cordero's Visa Application.............................3

      B.    8 U.S.C. § 1182(a)(3)(A)(ii) Is Unconstitutionally Vague..................5

            1.    The Void for Vagueness Doctrine Applies With Full Force to Immigration Statutes..................................................................5

            2.    8 U.S.C. § 1182(a)(3)(A)(ii) Is Unconstitutionally Vague Because It Fails To Give Ordinary People Fair Notice Of The Conduct It Punishes..................................................................7

                  i.    8 U.S.C. § 1182(a)(3)(A)(ii) Does Not Include A Scienter Requirement....................................................................8

                  ii.   8 U.S.C. § 1182(a)(3)(A)(ii) Bars Broad Everyday Conduct.......................................................................11

                  iii.  The Nature of 8 U.S.C. § 1182(a)(3)(A)(ii) Underscores The Need For A Strict Vagueness Test..........................12

3.    8 U.S.C. § 1182(a)(3)(A)(ii) Is Unconstitutionally Vague Because It Is So Standardless That It Invites Arbitrary Enforcement..............................................................................15

i.    8 U.S.C. § 1182(a)(3)(A)(ii) Includes No Minimal Guidelines For Its Application And Provides No Indication Of The Breadth of "Any Other Unlawful Activity".......................................................................16

ii.    8 U.S.C. § 1182(a)(3)(A)(ii) Gives Consular Officials Free Reign To Admit Or Deny Entry Based On Ad Hoc, Subjective, And Inconsistent Criteria............................18

iii.    The Doctrine Of Consular Non-Reviewability Shields Officials From Being Challenged For Arbitrarily Enforcing 8 U.S.C § 1182(a)(3)(A)(ii) ..........................22

IV.    PRAYER FOR RELIEF.............................................................24

# TABLE OF AUTHORITIES

**CASES**

*American Communications Ass'n., C.I.O., et al. v. Douds,*

    339 U.S. 382 (1950).......................................................................20

*Boutilier v. INS,*

    387 U.S. 118 (1967).................................................................5, 6

*City Of Chicago v. Morales,*

    527 U.S. 41 (1999) …………………………..............................8, 9

*Coates v. Cincinnati,*

    402 U.S. 611 (1971)…………………………......................8, 19

*Dimaya v. Lynch,*

    803 F.3d 1110 (9th Cir. 2015)......................................................5, 7

*Fong Haw Tan v. Phelan,*

    333 U.S. 6 (1948)...........................................................................5

*Grayned v. City of Rockford,*

    408 U.S. 104 (1972) ...........................................................19, 20, 21

*Holder v. Humanitarian Law Project,*

    561 U.S. 1 (2010) …………………..........................................10

*Johnson v. United States,*

    135 S.Ct. 2551 (2015) ...................................................................7

*Jordan v. De George*,

    341 U.S. 223 (1951)...................................................................5

*Kerry v. Din*,

    135 S. Ct. 2128 (2015) .......................................................4, 22

*Kleindienst v. Mandel*,

    408 U.S. 753 (1972) .................................................................22

*Lanzetta v. New Jersey*,

    306 U.S. 451 (1939)...................................................................8

*Ove v. Gwinn*,

    264 F.3d 817, 821 (9th Cir. 2001) ............................................2

*Padilla v. Kentucky*,

    559 U.S. 356 (2010)…………….............................................15

*Papachristou v. City of Jacksonville*,

    405 U.S. 156 (1972) ..............................................................6, 12

*Shame On You Prods., Inc. v. Banks*,

    120 F. Supp. 3d. 1123 (C.D. Cal. 2015)…………………..............................2

*Screws v. United States*,

    325 U.S. 91 (1945) ....................................................................9

*Smith v. Goguen*,

    415 U.S. 566 (1974)…….................................................15, 16, 19

*U.S. v. Reese*,

    92 U.S. 214 (1876)........................................................................8

*U.S. v. TengJiao Zhou*,

    815 F.3d 639 (9th Cir. 2016)........................................................2

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,

    455 U.S. 489 (1982)……....................................6, 7, 9, 12, 13

**STATUTES:**

8 U.S.C. § 16(b)…………………..........................................................7

8 U.S.C. § 1182(a)(3)(A)(i)……...................................................17

8 U.S.C. § 1182(a)(3)(A)(ii)...........................................*passim*

8 U.S.C. § 1182(a)(3)(A)(iii)….....................................................17

8 U.S.C. § 1182(a)…......................................................................18

8 U.S.C. § 1182(a)(2)....................................................................17

8 U.S.C. § 1182(a)(3)....................................................................18

18 U.S.C. § 924(e)(2)(B)(ii) ...........................................................7

28 U.S.C. § 2412(b) .....................................................................24

**RULES:**

Fed. R. Civ. P. 12(c)..............................................................................1, 2

**OTHER AUTHORITIES:**

Cambridge Dictionary, *Definition of the Word "Incidental",* (last visited March 23, 2018) https://dictionary.cambridge.org/us/dictionary/english/incidental.................9

Dictionary.Com, *Definition of the Word "Incidental"*, (last visited March 22, 2018), http://www.dictionary.com/browse/incidental.............................................8

English Oxford Living Dictionaries, *Definition of the Word "Incidental"*, (last visited March 22, 2018), https://en.oxforddictionaries.com/definition/incidental....8

*E.g.* Sibylla Brodzinksy & Ed Pilkington, *US Government Deporting Central American Migrants To Their Deaths*, The Guardian. (October 12, 2015, 4:02 PM), https://www.theguardian.com/us-news/2015/oct/12/obama-immigration-deportations-central-america. .................................................................................14

1
2

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION**

3

# I.    INTRODUCTION & BACKGROUND

4
5

Plaintiff SANDRA MUÑOZ ("Ms. Muñoz") and her spouse, Luis Asencio-

6

Cordero ("Mr. Asencio-Cordero"), are a husband and wife seeking to be reunited

7

in their home in the United States. Mr. Asencio-Cordero was denied admission to

8
9

this country at the Consulate in El Salvador without notice as to any factual reason

10

for being denied entry except for citation of a statute which accuses Mr. Asencio-

11

Cordero of seeking "to enter the United States to engage solely, principally, or

12
13

incidentally in … any other unlawful activity." *See* 8 U.S.C. § 1182(a)(3)(A)(ii).

14

Furthermore, the Government admitted that it cited the statute and the same

15

implied a bona fide factual basis.   Despite Defendants' arguments, this Court

16
17

expressly ruled the Government failed to provide a bona fide factual reason for

18

denying Mr. Asencio-Cordero's visa application. *See* (Order Den. Mot. to Dismiss,

19

ECF No. 47, line 3 at 18).

20
21

Moreover, 8 U.S.C. § 1182(a)(3)(A)(ii), as reasoned below, is

22

unconstitutionally vague.

23

Accordingly, Plaintiff now files her Motion for Judgment on the Pleadings

24
25

pursuant to Federal Rules of Civil Procedure 12(c).

26
27

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS        1

## II.     LEGAL STANDARD

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, "a party may move for judgment on the pleadings at any time after the pleadings are closed, so long as the motion is filed in sufficient time that it will not delay trial." *Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1143 (C.D. Cal. 2015). A Rule 12(c) motion for judgment on the pleadings tests the legal sufficiency of the claims and allegations asserted in the pleadings.

A motion for judgment on the pleadings should be granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law. *U.S. v. TengJiao Zhou*, 815 F.3d 639, 642 (9th Cir. 2016). In deciding a Rule 12(c) motion, a court may review the face of the pleadings, documents attached to the complaint or incorporated therein, and documents subject to judicial notice.

Additionally, a court's obligation to construe allegations in the light most favorable to the nonmoving party does not mean that those allegations must be construed in a light favorable to the nonmoving party, if such a construction cannot reasonably be made. *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).

## III.    LEGAL ARGUMENT

The Court should grant Plaintiff's Motion for Judgment on the Pleadings under 12(c).

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**A.** **Plaintiff Is Entitled To Judgment As A Matter Of Law Because Defendants Failed To Provide A Bona Fide Factual Reason For Denying Mr. Asencio-Cordero's Visa Application.**

The pleadings reflect the Defendants merely cited to 8 U.S.C. § 1182(a)(3)(A)(ii) in denying Mr. Asencio-Cordero's visa application. This was an insufficient basis to deny Mr. Asencio-Cordero admission to the U.S. The Defendants and the Plaintiff substantially agree on the core factual circumstances surrounding the denial. *See* (Am. Answer, ECF No. 49 ("Am. Answer"), ¶¶ 1-4; 6-7; 15-33).

The Defendants agree that Mr. Asencio-Cordero was interviewed by the U.S. consulate in San Salvador on May 28, 2015. *Id.* at ¶ 19. The Defendants agree that a consular officer found Mr. Asencio-Cordero ineligible under 8 U.S.C. § 1182(a)(3)(A)(ii). *Id.* at ¶ 20. The Defendants agree that the Consulate's Correspondence and Information Unit notified Plaintiff's spouse through prior counsel that they were forwarding the case to the immigration visa unit for review. *Id.* at ¶ 26. The Defendants agree that the Consulate thrice told Mr. Asencio-Cordero in April 2016 that they were maintaining their finding of inadmissibility. The Defendant also agree that in May 2016, the Chief of the Outreach and Inquiries Division of the Visa Services at the Department of State and the Consulate once again told Plaintiff that Mr. Asencio-Cordero was inadmissible. *Id.* at ¶¶ 26-31.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

As such, the parties' disagreement is purely a legal one. The Defendants' position is that they can deny Mr. Asencio-Cordero admission merely by citing 8 U.S.C. § 1182(a)(3)(A)(ii). The essence of the dispute is to be found in paragraph 5 of the Complaint, where Plaintiff asserts: "DOS has never provided a factual basis for denying Mr. Asencio-Cordero's immigrant visa on the ground of inadmissibility." (Complaint for Declaratory Relief, ECF No. 1 ("Compl.") at ¶ 5). The Defendants responded in their Amended Answer, "Deny. The visa was denied under 8 U.S.C. § 1182(a)(3)(A)(ii), which contains discrete factual predicates." (Am. Answer at ¶ 5). The Defendants accept the factual chronology leading up to the denial and admit, in substance, in paragraph 5, that they did not state a bona fide factual basis as required by the law and this Court.

The Defendants' Amended Answer and this Court's order denying the motion to dismiss establish, as a matter of law, that the Defendants did not provide the Plaintiff with any discrete factual predicates and that the denial was unlawful.

This Court ruled in its order denying the Defendants' motion to dismiss that "the mere citation to § 1182(a)(3)(A)(ii) fails to provide the discrete factual predicates necessary to deny a visa." (Order Den. Mot. to Dismiss, lines 25-28 at 11).

Based upon the foregoing, the Defendants' citation of § 1182(a)(3)(A)(ii) does not satisfy the requirement of *Kerry v. Din* as a matter of law and is legally

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          4

1   invalid. *See Din,* 135 S. Ct. 2128 (2015).  Consequently this court should grant
2
3   Plaintiff's motion for judgment on the pleadings and find that the Plaintiff is
4   entitled to judgment as a matter of law.

### B.     8 U.S.C. § 1182(a)(3)(A)(ii) Is Unconstitutionally Vague

####     1.     The Void For Vagueness Doctrine Applies With Full Force To Immigration Statutes

8       The void for vagueness doctrine applies in the immigration context,
9
10  generally speaking, and to 8 U.S.C. § 1182(a)(3)(A)(ii) in particular. The Ninth
11  Circuit has ruled that it has jurisdiction "to review questions of law, including
12  whether language in the immigration statutes is void for vagueness." *Dimaya v.*
13
14  *Lynch*, 803 F.3d 1110, 1112 (9th Cir. 2015) (cert. granted 9/26/2016).

15      In *Jordan v. De George*, the Supreme Court ruled that applying the
16
17  "established criteria of the 'void for vagueness' doctrine" to an immigration statute
18  was appropriate given the "grave nature of deportation" which is akin to
19  "banishment or exile."  341 U.S. 223, 231 (1951).  The Supreme Court in *Jordan*
20
21  noted, "deportation is a drastic measure and at times the equivalent of banishment
22  or exile." *Id.* (quoting *Fong Haw Tan*, 333 U.S. 6, 10 (1948)). In *Boutilier v. INS*,
23  the Supreme Court stated that the "void for vagueness doctrine [is] applicable to
24
25  civil as well as criminal actions." 387 U.S. 118, 123 (1967).  In both *Jordan* and

26
27

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS        5

*Boutilier*, all nine justices agreed that the void for vagueness doctrine applied to immigration statutes.

Moreover, the void for vagueness doctrine should apply in the immigration context where largely indigent applicants face grave consequence and lack legal literacy. Indeed, its application is even more appropriate than in the criminal context, since immigrants do not have the constitutional protections afforded to criminal defendants. The Supreme Court explained a lesser standard is permissible where businesses "can be expected to consult relevant legislation in advance of action" and that corporations "may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).

By contrast, in *Papachristou v. City of Jacksonville*, the Supreme Court struck down a vagrancy statute that impacted predominantly "poor people, nonconformists, dissenters [and] idlers" who should not be expected to have "been alerted to the regulatory schemes" of the statute. 405 U.S. 156, 170 (1972). Thus, when a statute affects parties that are less capable of clarifying the type of conduct prohibited, a higher degree of statutory clarity is constitutionally required.

The Supreme Court has also explained that vagueness is more tolerable where "the consequences of imprecision are qualitatively less severe" and that even the municipal ordinances in question were "'quasi-criminal,' and its

prohibitory and stigmatizing effect may warrant a relatively strict test." *Vill. of Hoffman Estates*, 455 U.S. at 499-500.

The rigorous application of the void for vagueness doctrine to immigration statutes is supported by the Supreme Court's recent ruling in *Johnson v. United States*, where the Court struck down 18 U. S. C. § 924(e)(2)(B)(ii), the "residual clause" of the Armed Career Criminal Act of 1984 (ACCA) setting sentencing requirements for "crimes of violence" as unconstitutionally vague. 135 S.Ct 2551 (2015). The Court held the statute was "[s]o vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Id.* at 2556. The *Dimaya* Court relied on the analysis in *Johnson* when it found 18 U.S.C. § 16(b) constitutionally void in an immigration setting. *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015).

> **2.   8 U.S.C. § 1182(a)(3)(A)(ii) Is Unconstitutionally Vague Because It Fails To Give Ordinary People Fair Notice Of The Conduct It Punishes**

The text of 8 U.S.C. § 1182(a)(3)(A)(ii)—which bars admission to those who seek to enter the U.S. to commit "any other unlawful activity" even "incidentally"— refers to a universe of conduct that is so broad and ill-defined as to give immigrants no notice of the type of conduct that could subject them to an inadmissibility finding.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

It is a fundamental principle that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *City of Chicago v. Morales*, 527 U.S. 41, 58 (1999) (quoting *Lanzetta v. New Jersey,* 306 U.S. 451, 453 (1939). "The Constitution does not permit a legislature to 'set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large.'" *City of Chicago*, 527 U.S. at 60 (quoting *U.S. v. Reese, et al.,* 92 U.S. 214, 221 (1876)). A law is unconstitutional if it is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *City of Chicago*, 527 U.S. at 60 (quoting *Coates v. Cincinnati,* 402 U.S. 611, 614 (1971)).

### i. 8 U.S.C. § 1182(a)(3)(A)(ii) Does Not Include A Scienter Requirement

The absence of an intent requirement in the 8 U.S.C. § 1182(a)(3)(A)(ii) means a consular officer may bar an individual based on a belief that they may *accidentally* commit unlawful activity at some point in the future. The *mens rea* standard in 8 U.S.C. § 1182(a)(3)(A)(ii) makes inadmissible aliens who seek to enter the U.S. to engage "incidentally" in "any other unlawful activity." Dictionary.com defines "incidental" as "happening or likely to happen in an

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          8

unplanned or subordinate conjunction with something else."[1] Oxford Dictionary defines it as "occurring by chance in connection with something else."[2] Cambridge Dictionary defines it as "happening by chance, or in connection with something of greater importance."[3]

Each of these definitions indicates that there is no intent required whatsoever under 8 U.S.C. § 1182(a)(3)(A)(ii) and that the Defendants may deny admission to an alien on the grounds that they may accidentally, by chance engage in an unlawful act at some point during their potential presence in the United States. They do not meet the *City of Chicago* requirement that a statute put forward a "comprehensible normative standard" and provide no notice whatsoever to applicants of the type of activity for which they may be barred.

In *Village of Hoffman Estates*, the Supreme Court found, "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."  455 U.S. at 498.  In *Screws v. United States*, Justice Frankfurter explained, "[W]illful conduct

---

[1] Dictionary.Com, *Definition of the Word "Incidental"*, (last visited March 22, 2018), http://www.dictionary.com/browse/incidental.

[2] English Oxford Living Dictionaries, *Definition of the Word "Incidental"*, (last visited March 22, 2018), https://en.oxforddictionaries.com/definition/incidental.

[3] Cambridge Dictionary, *Definition of the Word "Incidental",* (last visited March 23, 2018) https://dictionary.cambridge.org/us/dictionary/english/incidental.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          9

cannot make definite that which is undefined.   But willful violators of constitutional requirements, which have been defined, certainly are in no position to say that they had no adequate advance notice that they would be visited with punishment."  325 U.S. 91, 104 (1945).  In *Holder v. Humanitarian Law Project*, the Supreme Court rejected a void for vagueness challenge to §§302 and 303 of the Antiterrorism and Effective Death Penalty Act by citing the statute's knowledge requirement as the lynchpin for its holding.  The Court held, "the knowledge requirement of the statute [relating to providing material support to terrorists] further reduces any potential for vagueness." 561 U.S. 1 (2010).

When there is no scienter requirement, as is the case here, the doors are thrown open to punishing individuals who had no idea their conduct could lead to their banishment from the United States.

It strains credulity to consider how the Defendants might determine which intending immigrant may accidentally conduct "any other unlawful activity" and how immigrant applicants would have notice that their conduct may subject them to banishment from the U.S.  Essentially 8 U.S.C. § 1182(a)(3)(A)(ii) purports to grant consular officials the power of clairvoyance. Moreover, 8 U.S.C. § 1182(a)(3)(A) contradictorily states that aliens may *seek* to enter the United States to engage *accidentally* in unlawful activity. 8 U.S.C. § 1182(a)(3)(A)(ii) gives the

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          10

Defendants the power to determine which aliens intend to do the unintentional, and this does not pass constitutional muster.

Unfortunately, guesses, insinuations, and prejudices are the only means for consular officers to obtain knowledge or reasonable ground to reach into an immigrant applicant's subconscious and determine their own thoughts and intentions for them. It is as if the consular officer is projecting the intent to commit an unlawful act onto the applicant by virtue of his DNA. Aliens hoping to gain admission to the United States have no clear language with which they can model their behavior to prove their worthiness.

### ii.   8 U.S.C. § 1182(a)(3)(A)(ii) Bars Broad Everyday Conduct

The Defendants can bar 100 percent of applicants on the grounds that consular officers know or have reason to believe the aliens are entering the U.S. to incidentally engage in "any other unlawful activity" because 8 U.S.C. § 1182(a)(3)(A)(ii) applies to conduct that even the most law-abiding people engage in incidental to everyday life.

For example, an alien who an officer believes may conduct the unlawful activity of jaywalking incidental to picking up his child at school can be barred under 8 U.S.C. § 1182(a)(3)(A)(ii).  Certainly there are few people who have gone their whole lives without unlawfully overstaying their parking meter incidentally to

running errands. However, those among us who happen to be aliens seeking admission to the United States can be barred for the assumption they will commit such benign behavior under 8 U.S.C. § 1182(a)(3)(A)(ii). What relation any of this has to do with national security is far from clear.

### iii. The Nature Of 8 U.S.C. § 1182(a)(3)(A)(ii) Underscores The Need For A Strict Vagueness Test

A denial of entry under 8 U.S.C. § 1182(a)(3)(A)(ii) subjects many immigrants to the imminent threat of death and persecution, as well as the prospect of long-term separation from family. In *Village of Hoffman Estates*, the Supreme Court explained that "the degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment." 455 U.S. at 498. The Court in *Village of Hoffman Estates* enumerated a series of factors that courts must consider in determining the degree of tolerance.

One factor highlighted by the Supreme Court is the breadth or narrowness of the enactment's subject matter. *Id.* In *Papachristou v. City of Jacksonville*, the Supreme Court wrote that "greater leeway is allowed" in regulations, including economic regulations, where the "acts limited are in a narrow category." 405 U.S. 156, 162 (1972). Less leeway is accepted where the amount of acts limited are broad. "Where the list of crimes is so all-inclusive and generalized as the one in

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          12

1    this ordinance, those convicted may be punished for no more than vindicating

2    affronts to police authority." *Id.* at 166.   In the instant case, the language of 8

3    U.S.C. § 1182(a)(3)(A)(ii) shows the type of conduct barred is unlimited.   The

4    statute bars "any other" conduct that is unlawful, even the type of conduct

5    committed accidentally or "incidental" to legal acts. For this reason, the least

6    amount of leeway should be permitted.

7        A second factor is the affected person or entity's "ability to clarify the

8    meaning of the regulation by its own inquiry." *Village of Hoffman Estates*, 455

9    U.S. at 498.   In *Village of Hoffman Estates*, the Supreme Court cited the fact that

10   corporations are best positioned, due to their formal organization and financial

11   position, to clarify potentially vague enactments. *Id.*

12       The history of Mr. Asencio-Cordero's case shows just how powerless

13   immigrants are to clarify the meaning of the statute. In this case, it was

14   Defendants' practice to reject Mr. Asencio-Cordero's requests for clarification

15   while his application was being processed. Mr. Asencio-Cordero submitted his

16   application for an unlawful presence waiver, received approval, and departed the

17   United States for San Salvador for his consular interview.   After having placed his

18   trust in the adjudication process, he was told by the consulate that his application

19   for admission was denied. The government refused to provide a reason for denying

20   his application, citing only the statute they alleged he violated.   Mr. Acensio-

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          13

Cordero, through prior counsel, repeatedly asked Defendants to clarify why they had denied his application. The government replied to each request for clarification by failing to provide any factual reason for their denial. In short, Defendants made it impossible for Mr. Asencio-Cordero to clarify the meaning of the statute by his own inquiry.

The fact that 8 U.S.C. § 1182(a)(3)(A)(ii) is a civil and not a criminal statute only strengthens the case for a narrow allowance of vagueness. Immigrants impacted by the statute get the worst of both worlds. The punishment of being banished from the United States and separated from family and friends—perhaps permanently—can be worse than even a lengthy criminal sentence.

A third factor is the severity of the "consequences of imprecision." *Id*. For some, being banished from the United States is a death sentence, especially when an immigrant's home country is violent, corrupt, war-torn, or impoverished (as is the case in El Salvador, Mr. Asencio-Cordero's home country).[4] For Plaintiff, the consequence is being permanently separated from her husband while knowing he is marooned in precisely the kind of country described above.

---

[4] *E.g.* Sibylla Brodzinksy & Ed Pilkington, *US Government Deporting Central American Migrants To Their Deaths*, The Guardian. (October 12, 2015, 4:02 PM), https://www.theguardian.com/us-news/2015/oct/12/obama-immigration-deportations-central-america.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Inadmissibility or removability is a severe punishment, the consequences of which can be is much harsher than criminal convictions. The Supreme Court noted in *Padilla v. Kentucky* that "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." 559 U.S. 356, 364 (2010).

A fourth, discussed *supra*, is whether the enactment has a scienter requirement. Each of these factors shows that the nature of 8 U.S.C. § 1182(a)(3)(A)(ii) militates against accepting vagueness.

### 3. 8 U.S.C. § 1182(a)(3)(A)(ii) Is Unconstitutionally Vague Because It Is So Standardless That It Invites Arbitrary Enforcement

8 U.S.C. § 1182(a)(3)(A)(ii) is also unconstitutionally vague because it invites arbitrary enforcement by unaccountable consular officers who have free reign to interpret the statute however they see fit. There is no mechanism for applicants to clarify the statute's meaning, as Mr. Asencio-Cordero's own case history shows, and the doctrine of consular non-reviewability ensures that authorities need not clarify what is taking place in the adjudication process until long after the decision is made.

In *Smith v. Goguen*, the Supreme Court ruled, "Where inherently vague language permits such selective law enforcement, there is a denial of due process." 415 U.S. 566, 576 (1974). Further, the Court held, "Statutory language of such a

standardless sweep allows policemen, prosecutors, and juries to pursue their personal predilections.  Legislatures may not so abdicate their responsibilities for setting the standards of the criminal law…Mr. Justice Black, in a concurring opinion, voiced a concern, which we share, against entrusting lawmaking 'to the moment-to-moment judgment of the policeman on his beat.'" *Id.* at 575.  In *Smith*, the court struck down a flag misuse statute that subjected to liability anyone who publicly treated the U.S. flag with contempt. *Smith*, 415 U.S. 566, 576 (1974). In so holding, the court determined there was no adequate warning of forbidden conduct and found the standard so indefinite, "police, court, and jury are free to react to nothing more than their own preferences…" The statute at bar impermissibly invites the same kind of projection of preference.

> ### i.    8 U.S.C. § 1182(a)(3)(A)(ii) Includes No Minimal Guidelines For Its Application And Provides No Indication Of The Breadth Of "Any Other Unlawful Activity"

Based on the text of 8 U.S.C. § 1182(a)(3)(A)(ii) it is impossible to determine the meaning of "any other unlawful activity."  This term is the heart of the statute and is worded in so vague a manner as to guarantee inconsistent interpretations leading to arbitrary enforcement.  With each officer acting as a judge interpreting the statute in his or her own way, the statute invites

contradictory rulings and decision-making with no way of reconciling the different rulings in a consistent and non-arbitrary way.

First, the term "any other" could be read broadly to refer to "any" conduct "other" than the other two subsections of 8 U.S.C. § 1182(a)(3)(A), namely, (i) and (iii). Since 8 U.S.C. § 1182(a)(3)(A)(i) relates to espionage and smuggling and (iii) refers to revolutionary anti-government activity, "any other unlawful activity" could be read to refer to the whole universe of unlawful activity that is not espionage, smuggling, or revolutionary activity.

Second, the term "any other unlawful activity" could be interpreted under the doctrine of *eiusdem generis* to refer to conduct that is of the same kind, class, or nature as the conduct outlined in subsections 8 U.S.C. § 1182(a)(3)(A)(i) and (ii).  This reading would limit "any other unlawful activity" to unlawful activity related only to espionage, smuggling, or revolutionary activity.

Third, under the statutory interpretation doctrine of the rule against surplusage, the "any other unlawful activity" language in 8 U.S.C. § 1182(a)(3)(A)(ii) could be read to exclude overlap with "criminal and related grounds" in 8 U.S.C. § 1182(a)(2). Under this reading, the "unlawful activity" in 8 U.S.C. § 1182(a)(3)(A)(ii) would only include "unlawful activity" which is not criminal.

Fourth, the header of the umbrella section 8 U.S.C. § 1182(a)(3), which reads "security and related grounds," could limit the meaning of "any other unlawful activity."  Employing a broader application of *eiusdem generis* and the rule against surplusage, this could limit "any other unlawful activity" to "security" activity related to but not overlapping with the conduct outlined in subheaders (A)-(G).  It is by no means clear what type of activity this would be.

Of course, for the second, third, and forth interpretations, use of the word "*any*" in "any other unlawful activity" would seem to indicate that the subsection overlaps with all of the other types of unlawful conduct outlined in 8 U.S.C. § 1182(a).  These conflicting interpretations of the statute flow from the vagueness of its text.

### ii.   8 U.S.C. § 1182(a)(3)(A)(ii) Gives Consular Officials Free Reign to Admit or Deny Entry Based on Ad Hoc, Subjective, and Inconsistent Criteria

8 U.S.C. § 1182(a)(3)(A)(ii) is so sweeping and vague that it effectively grants consular officers the power to act as unaccountable judges that adjudicate *in camera* and issue sealed decisions based on their own *ad hoc*, subjective criteria without being subject to a right to appeal or review. This does not comport with traditional notions of democracy and the separation of powers integral to the fabric of the U.S. Constitution.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          18

In *Grayned v. City of Rockford*, the Supreme Court ruled, "[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.  A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application."  408 U.S. 104, 109 (1972).

The Supreme Court in *Smith v. Goguen*—the case involving an anti-flag desecration statute barring "contemptuous" treatment of the US flag—elaborated, explaining that a statute may be saved from a finding of unconstitutional vagueness if it is clearly intended to proscribe certain conduct.

> To be sure, there are statutes that by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain.  The hard-core violator concept makes some sense with regard to such statutes.  The present statute, however, is not in that category.  This criminal provision is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all." *Coates v. City of Cincinnati*, 402 U.S. 611, 615 (1971).  Such a provision simply has no core.  This absence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause.

415 U.S. at 577.  The same outcome applies in the instant case, where it is not clear any specific type of activities 8 U.S.C. § 1182(a)(3)(A)(ii) intends to proscribe.

1    Convicted criminals, terrorists, Nazi persecutors, and other specific types of

2    inadmissible aliens are clearly barred by different subsections of 8 U.S.C. §

3    1182(a). In contrast, it would be hard to write a statute that encompasses such an

4    ill-defined and broad amount of activity as 8 U.S.C. § 1182(a)(3)(A)(ii). The

5    statute specifies no standard of conduct.  It has no core.  It has no ascertainable

6

7    standard for inclusion and exclusion.  It is the mother of all catch-alls.

8    While "[i]t will always be true that the fertile legal imagination can conjure

9

10   up hypothetical cases in which the meaning of [disputed] terms will be in nice

11   question," *Grayned*, 408 U.S. at 112 (quoting *American Communications Assn. v.*

12

13   *Douds*, 339 U.S. 382, 412 (1950)), the instant statute clearly transcends the

14   boundary from nice hypothetical to clearly arbitrary and *ad hoc* enforcement.  8

15

16   U.S.C. § 1182(a)(3)(A)(ii) fails the test established by the Supreme Court in

17   *Grayned*.

18   There, the Supreme Court found an anti-noise ordinance limiting non-labor-

19

20   related pickets to certain hours and certain places outside of elementary schools

21   was not unconstitutionally vague.  The Court explained that it is "clear what the

22   ordinance as a whole prohibits" because it clearly "forbids deliberately noisy or

23

24   diversionary activity that disrupts or is about to disrupt normal school activities."

25   *Id.* at 110.  The statute "forbids this willful activity at fixed times—when school is

26   in session—and at a sufficiently fixed place—'adjacent' to the school."  *Id.*

27

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS        20

Even here, the Supreme Court said "the question is close" as to whether the statute was so vague that it allowed unconstitutional, arbitrary, *ad hoc* enforcement.

The instant statute is clearly distinguishable.  Unlike the anti-noise ordinance in *Grayned*, 8 U.S.C. § 1182(a)(3)(A)(ii) has no limiting language whatsoever.  It bars admission to anyone who a consular officer knows or has reason to believe may commit "any other unlawful activity," even accidentally, when in the U.S.  Nothing is fixed or defined, by time, place, intent, type of activity, consequences of that activity, whether that activity must be criminal or simply unlawful, or in any other way.

Unlike in *Grayned*, it is not clear what the statute prohibits, since the many overlapping and contradictory ways of interpreting the statute, listed *supra*, allow for each consular officer to interpret the statute's meaning in his or her own way.

Under the status quo, each officer is a judge of statutory interpretation.  Each may determine what conduct he or she feels should be included and excluded as barring an applicant from gaining admission to the United States.

There are likely many more ways consular officers have interpreted and enforced the statute, but applicants have no way of clarifying the meaning of the statute.  This is precisely the type of arbitrary and *ad hoc* enforcement that the void for vagueness doctrine is intended to protect against.

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

### iii.     The Doctrine Of Consular Non-Reviewability Shields Officials From Being Challenged For Arbitrarily Enforcing 8 U.S.C. § 1182(a)(3)(A)(ii)

The danger of arbitrary and *ad hoc* enforcement is heightened by the fact that the doctrine of consular non-reviewability makes it difficult for individuals effected by 8 U.S.C. § 1182(a)(3)(A)(ii) to challenge violations by consular officers.  While Plaintiff does not challenge the legality of the doctrine of consular non-reviewability as established in *Kleindienst v. Mandel*, 408 U.S. 753 (1972) and *Din*, Plaintiff *does* challenge the Defendants' illegal practice of providing no factual reasons for denials and merely citing to the statute instead.  Both the doctrine of consular non-reviewability in general as well as the Defendants' illegal abuse of the doctrine cries out for a low judicial tolerance of vague statutory language.

First, immigrants who have not yet entered the United States find it much harder to establish standing in federal court. Only immigrants with associations to U.S. citizens that trigger constitutional standing can even ask to challenge a denial on the grounds of 8 U.S.C. § 1182(a)(3)(A)(ii), as is the case here. The poorest individuals, those with the least number of professional or family connections in the United States, are most vulnerable to arbitrary and *ad hoc* enforcement of their requests for admission.

Second, the doctrine of consular non-reviewability means that even those immigrants who do have standing to raise due process challenges through a U.S. citizen will be unable to "get beneath" the consular official's denial unless they can show the denial was not "facially legitimate and bona fide." *Din*, 135 S.Ct. 2128, 2139 (2015) (Kennedy, J. concurring).

The danger of arbitrary, unaccountable enforcement is highlighted by the government's position in the instant case. Here, the Defendants' position is that it need only cite the statute in order to satisfy the "facially legitimate and bona fide" standard. In the Plaintiff's Complaint, Ms. Muñoz asserted that the State Department "has never provided a factual basis for denying Mr. Asencio-Cordero's immigrant visa on the ground of inadmissibility." (Compl. at ¶ 5). In their Amended Answer, the Defendants deny this and state only: "The visa was denied under 8 U.S.C. § 1182(a)(3)(A)(ii), which contains discrete factual predicates." (Am. Answer at ¶ 5).

This Court's order of December 11, 2017 ruled, "The Court finds that 8 U.S.C. § 1182(a)(3)(A)(ii) does not provide the 'discrete factual predicates' necessary to deny a visa because the statute merely precludes admission, without further edification, to an alien who a consular officer 'knows, or has reasonable ground to believe, seeks to enter the United States to engage…in…any other unlawful activity.'" (Order Den. Mot. to Dismiss, lines 16-21 at 12).

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          23

1

2   There are many people—perhaps thousands—who are similarly situated as

3   the Plaintiff here, whose spouses have been similarly denied visas and who have

4   been given nothing more than a citation to this impermissibly vague statute. This

5   invites abuse without any measure of accountability.

6   The lack of accountability over arbitrary enforcement also raises the

7   likelihood of discriminatory enforcement.  At present, a consular officer can deny

8   an immigrant's visa for any arbitrary or discriminatory reason without needing to

9   give any reason but to cite the statute.  Mrs. Muñoz respectfully requests this Court

10   put a stop to this unchecked behavior by ruling that U.S.C. § 1182(a)(3)(A)(ii) is

11   unconstitutionally vague.

12

13

14   ## IV.   PRAYER FOR RELIEF

15   WHEREFORE, Plaintiff prays that this Court grant the following relief:

16

17   (1) Declare that the Department of State's finding that Mr. Asencio-Cordero

18   is ineligible to immigrate to the United States due to an unfounded belief

19   that he is entering for the purpose of carrying out "unlawful acts" is not bona

20   fide;

21   (2) Declare that 8 U.S.C. Section 1182(a)(3)(A)(ii) is unconstitutionally

22   vague;

23   (3)  Order the State Department to review this matter again, In accordance

24   with this decision;

25

26

27

(3) Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. Section 2412(b); and

(4) Grant such further relief as the Court deems just and proper.

Dated: April 4, 2018                    Respectfully submitted,


                              By: /s/ Alan R. Diamante
                                  adiamante@alandiamantelaw.com
                                  Law Office of Alan R. Diamante,
                                  APLC 510 West 6th St., Suite 506
                                  Los Angeles, CA 90014
                                  Telephone: (213) 943-4555

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS          25

1
2

## CERTIFICATE OF SERVICE

3    CASE NO. CV 2:17-cv-37-AS

4
      I certify that on April 4, 2018, I served a copy of the foregoing NOTICE OF
5
6    MOTION; PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS;

7    MEMORANDUM OF POINTS AND AUTHORITIES and PROPOSED ORDER

8
      by filing this document with the Clerk of Court through the CM/ECF system,
9
10   which will provide electronic notice and an electronic link to this document to the

11   following attorneys of record:

12   Stacey I. Young
13   Email: stacey.young@usdoj.gov

14   Nicole N. Murley
15   Email: nicole.murley@usdoj.gov

16   OIL-DCS Trial Attorney
17   Email: oil-dcs.cacd@usdoj.gov

18                        By: /s/ Alan R. Diamante
19                        adiamante@alandiamantelaw.com
                          Law Office of Alan R. Diamante,
20                        APLC 510 West 6th St., Suite 506
21                        Los Angeles, CA 90014
                          Telephone: (213) 943-4555
22
23
24
25
26
27

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

MUÑOZ, Sandra;                          )
ASENCIO-CORDERO, Luis Ernesto           )
                                        )
                                        )
        Plaintiff,                      )
              v.                        )
                                        )            CASE NO. 2:17-cv-37
UNITED STATES DEPARTMENT OF             )
STATE; REX W. TILLERSON, United         )
States Secretary of State; Mark LEONI,  )
United States Consul General, San       )
Salvador, El Salvador.                  )
                                        )
                                        )

        Defendants

ORDER

This matter came before the Court on Plaintiff's motion for judgment on the

pleadings. The court has considered the motion and grants it.

Accordingly, Judgment is ordered in the favor of the Plaintiff.

**IT IS SO ORDERED.**

                    **Dated:** _____
                              ALKA SAGAR
                              United States Magistrate Judge

PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS