1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   SANDRA MUÑOZ and LUIS ERNESTO          CASE NO. CV 17-0037 AS
     ASENCIO-CORDERO,
12
                    Plaintiffs,
13
          v.                                **MEMORANDUM OPINION AND ORDER**
14
     UNITED STATES DEPARTMENT OF
15   STATE, et al.,

16                  Defendants.

17

18                         **INTRODUCTION**

19

20        On January 3, 2017, Sandra Muñoz and Luis Ernesto Asencio-

21   Cordero filed a Complaint for Declaratory Relief against the U.S.

22   Department of State ("DOS"); Mike Pompeo, the U.S. Secretary of

23   State; and Brendan O'Brien, the U.S. Consul General in San

24   Salvador, El Salvador,[1] challenging the denial of Asencio's visa

25   _____

26        [1]    The Complaint originally named John F. Kerry as U.S.
     Secretary of State and Mark Leoni as U.S. Consul General.  Mike
     Pompeo, the current U.S. Secretary of State, and Brendan O'Brien,
27   Consul General at the U.S. Embassy in Sal Salvador, are substituted
     for their predecessors.  Fed. R. Civ. P. 25(d).
28

application.  (Dkt. No. 1).  The Complaint raises six causes of action: (1) the visa denial was not facially legitimate and bona fide (Count One); (2) the visa denial violates the Equal Protection Clause of the Fifth Amendment (Count Two); (3) the visa denial violates the separation of powers (Count Three); (4) the visa denial was made in bad faith (Count Four); (5) the visa denial without judicial review violates the Administrative Procedures Act (Count Five); and (6) 8 U.S.C. § 1182(a)(3)(A)(ii) is unconstitutionally vague (Count Six).  (Compl. ¶¶ 34-51). Plaintiffs seek a declaration that the DOS's reason for denying Asencio's visa application was not bona fide and 8 U.S.C. § 1182(a)(3)(A)(ii) is unconstitutionally vague. (Id. at 12).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 25, 27, 29).

On September 11, 2018, after the Court had denied Defendants' Motion to Dismiss (Dkt. Nos. 37, 47) and Plaintiffs' Motion for Judgment on the Pleadings (Dkt. Nos. 52, 49), the parties filed a Joint Rule 26(f) Report and Case Management Conference Statement (Dkt. No. 65).  In the Rule 26(f) Report, the parties disagree whether Plaintiffs are entitled to take any discovery.  Defendants contend that because "Defendants have now provided Plaintiffs with a bona fide factual reason for denying Mr. Asencio-Cordero's visa," "discovery is [not] warranted or necessary to resolve the issues in this case." (Dkt. No. 65 at 9).  After hearing arguments from the parties, the Court ordered further briefing on "whether Plaintiff is entitled to conduct discovery relating to the

following issues: the facts in the record on which the Consular Officer based the decision to deny Mr. Asencio-Cordero's immigrant visa application; and whether the denial of Mr. Asencio-Cordero's immigrant visa application was in bad faith." (Dkt. No. 66). On November 9, 2018, Defendants filed their Supplemental Brief. (Dkt. No. 76). Plaintiffs filed a Response on November 30, 2018. (Dkt. No. 77).

The Court finds this issue appropriate for resolution without an additional hearing. L.R. 7-15. For the reasons discussed below, the Court grants Plaintiffs the authority to conduct limited discovery.

## BACKGROUND

Asencio is a native and citizen of El Salvador, who arrived in the United States in March 2005. (Compl. ¶ 15).[2] In July 2010, he married Muñoz, who is a U.S. citizen by birth. (¶ 16). In April 2015, Asencio departed the United States to pursue an immigration visa with the DOS, based on the approved immigrant relative petition that Muñoz filed. (¶¶ 3, 18). In May 2015, Asencio had an initial interview with the U.S. Consulate in El Salvador. (¶ 19). Asencio has multiple tattoos but denied ever being associated with a criminal gang. (¶¶ 20-21). He submitted evidence from Humberto Guizar, an expert witness, finding that

---

[2] Unless otherwise noted, all citations to Plaintiffs' factual allegations are to the relevant paragraph numbers in the Complaint. (Dkt. No. 1).

3

Asencio was "not a gang member nor does he have any tattoos that are representative of any known criminal street gang." (¶ 21). Guizar, an attorney and a court-approved gang expert, declared after reviewing photographs of all Asencio's tattoos that "Asencio does not have any tattoos that are representative of the Mara Salvatruchas gang [(MS-13)] or any other known criminal street gang" in either El Salvador or the United States. (Dkt. No. 77-1, Ex. M (Guizar Decl.) at ¶¶ 1, 7-9). Guizar concluded that "Asencio is not a gang member, nor is there anything that I am aware of that can reasonably link him to any known criminal organization." (Id. ¶ 10).

On or about December 28, 2015, the Consular Section denied Asencio's visa application. (Compl. ¶ 20). Asencio was denied lawful permanent residence status on the grounds that he was inadmissible pursuant to 8 U.S.C. § 1182(a)(3)(A)(ii), which states that "[a]ny alien who a consular officer or the Attorney General knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in . . . any other unlawful activity" is ineligible to receive a visa and is ineligible to be admitted to the United States. (¶ 22).

Muñoz contacted Congresswoman Judy Chu, who sent a letter on Muñoz's behalf to the DOS on January 20, 2016. (¶ 23). Consul Landon R. Taylor responded to Chu's letter on January 21, 2016, citing § 1182(a)(3)(A)(ii), but provided no specific facts for finding Asencio inadmissible. (¶ 24). In April 2016, the Consulate forwarded the case to the immigration visa unit for review. (¶ 26).

On April 13, 2016, Taylor reported to Plaintiffs: "the finding of ineligibility for [Asencio] was reviewed by the [DOS], which concurred with the consular officer's decision. Per your request, our Immigration Visa Unit took another look at this case, but did not change the decision." (¶ 28). Plaintiffs wrote to the DOS's Office of Inspector General, requesting that a reason be given for the inadmissibility decision. (¶ 30). On May 18, 2016, Christine Parker, the DOS's Chief of the Outreach and Inquiries Division of Visa Services, responded merely that the DOS "concurred in the finding of ineligibility." (¶ 33).

In the parties' Rule 26(f) Report, Defendants assert – for the first time – that "the consular officer who denied Mr. Asencio-Cordero's visa application did so after determining that Mr. Asencio-Cordero was a member of known criminal organization." (Dkt. No. 65 at 4). In their Supplemental Brief, Defendants filed a declaration by Matt McNeil, an attorney advisor at DOS, who reviewed DOS's electronic database concerning the immigrant visa application filed by Muñoz on behalf of Asencio. (Dkt. No. 76-1 (McNeil Decl.) at ¶¶ 1-2). The database indicates that the consular officer denied Asencio's immigrant visa application "based on the in-person interview, a criminal review of Mr. Asencio-Cordero, and a review of the [sic] Mr. Asencio-Cordero's tattoos." (Id. ¶ 3). The consular officer "determined that Mr. Asencio-Cordero was a

member of a known criminal organization identified in 9 FAM 302-5-4(b)(2), specifically MS-13."[3]  (Id.).

## STANDARD OF REVIEW

Under amended Rule 26(b), the scope of permissible discovery is subject to a proportionality requirement.  Thus, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  This proportionality requirement "is designed to avoid . . . sweeping discovery that is untethered to the claims and defenses in litigation ."  Mfg. Automation & Software Sys., Inc. v. Hughes, No. CV 16-8962, 2017 WL 5641120, at *5 (C.D. Cal. Sept. 21, 2017). Nevertheless, relevant information "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).  In fact, "[r]elevance for purposes of discovery is defined very broadly." Garneau v. City of Seattle, 147 F.3d 802, 812 (9th Cir. 1998).  The

_____

[3]    The Foreign Affairs Manual (FAM) "is published by the Department of State and . . . contains the functional statements, organizational responsibilities, and authorities of each of the major components of the U.S. Department of State, including Consular Officers." Sheikh v. U.S. Dep't of Homeland Sec., 685 F. Supp. 2d 1076, 1090 (C.D. Cal. 2009).

party opposing discovery is "required to carry a heavy burden of showing why discovery [should be] denied." Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975); accord Hsingching Hsu v. Puma Biotechnology, Inc., No. 15 CV 0865, 2018 WL 4951918, at *4 (C.D. Cal. June 27, 2018). Further, district courts have "broad discretion" to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002) (citation and alteration omitted).

**DISCUSSION**

"Although the Constitution contains no direct mandate relating to immigration matters, the Supreme Court has long recognized that the political branches of the federal government have plenary authority to establish and implement substantive and procedural rules governing the admission of aliens to this country." Jean v. Nelson, 727 F.2d 957, 964 (11th Cir. 1984), aff'd, 472 U.S. 846 (1985). "The exclusion of aliens is a fundamental act of sovereignty. The right to do so stems not alone from legislative power but is inherent in the executive power to control the foreign affairs of the nation." U.S. ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 542 (1950). "In practice, however, the comprehensive character of the [Immigration and Nationality Act (INA)] vastly restricts the area of potential executive freedom of action, and the courts have repeatedly emphasized that the responsibility for regulating the admission of aliens resides in the first instance with Congress." Jean, 727 F.2d at 965. "Thus, as a result of the existence of inherent executive power over immigration and the

broad delegations of discretionary authority in the INA, the separation-of-powers doctrine places few restrictions on executive officials in dealing with aliens who come to this country in search of admission or asylum." Id. at 967. "The Court without exception has sustained Congress' plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." Kleindienst v. Mandel, 408 U.S. 753, 766 (1972) (citation omitted). "When Congress delegates this plenary power to the Executive, the Executive's decisions are likewise generally shielded from administrative or judicial review." Andrade-Garcia v. Lynch, 828 F.3d 829, 834 (9th Cir. 2016); see Knauff, 338 U.S. at 544 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").

Nevertheless, the Government's plenary power "does not mean that it is wholly immune from judicial review." Jean, 727 F.2d at 975; see Hazama v. Tillerson, 851 F.3d 706, 708 (7th Cir. 2017) ("the Court has never entirely slammed the door shut on review of consular decisions on visas"). While "[t]he discretionary decisions of executive officials in the immigration area are . . . subject to judicial review, . . . the scope of that review is extremely limited." Id. at 976; see Fiallo v. Bell, 430 U.S. 787, 793 n.5 (1977) ("Our cases reflect acceptance of a limited judicial responsibility under the Constitution . . . with respect to the power of Congress to regulate the admission and exclusion of aliens . . . ."); Hampton v. Mow Sun Wong, 426 U.S. 88, 101 n.21 (1976) ("the power over aliens is of a political character and

therefore subject only to narrow judicial review"). Thus, in the context of denying a visa application, a court must "limit[ ] its inquiry to the question whether the Government had provided a 'facially legitimate and bona fide' reason for its action." Kerry v. Din, 135 S. Ct. 2128, 2140 (2015) (Kennedy, J., concurring); see Mandel, 408 U.S. at 770 ("We hold that when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant."); see generally Nadarajah v. Gonzales, 443 F.3d 1069, 1082 (9th Cir. 2006) ("The [Government] abused its discretion in denying parole [to any asylum applicant] because the reasons it provided were not facially legitimate and bona fide."); see also Cardenas v. United States, 826 F.3d 1164, 1171-72 (9th Cir. 2016) (determining that the Kennedy concurrence in Din "represents the holding of the Court").

Din laid out a two-part test for determining whether the denial of a visa provides the "facially legitimate and bona fide reason" required by Mandel. "First, the consular officer must deny the visa under a valid statute of inadmissibility." Cardenas, 826 F.3d at 1172. "Second, the consular officer must cite an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,' or there must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." Id.

(quoting <u>Din</u>, 135 S. Ct. at 2141).  Here, while the consular officer's citation to § 1182(a)(3)(A)(ii) was sufficient to demonstrate that the visa denial relied on a valid statute of inadmissibility, the Court previously determined that § 1182(a)(3)(A)(ii) does not provide the "discrete factual predicates" necessary to deny a visa because the statute merely precludes admission, without further edification, to an alien who a consular officer "knows, or has reasonable ground to believe, seeks to enter the United States to engage . . . in . . . any other unlawful activity."  8 U.S.C. § 1182(a)(3)(A)(ii); (<u>see</u> Dkt. No. 59 at 11-12).[4]

Defendants contend that there are now facts in the record that provide a facial connection to the inadmissibility determination under § 1182(a)(3)(A)(ii).  (Dkt. No. 76 at 8-10).  However, the consular officer's mere <u>conclusion</u> that Asencio is a member of MS-

---

[4]     In its Supplemental Brief, Defendants contend that the Supreme Court's recent decision in <u>Trump v. Hawaii</u>, 138 S. Ct. 2392 (2018), makes clear that a citation to a valid statute of inadmissibility alone satisfies <u>Din</u>'s "facially legitimate and bona fide" standard.  (Dkt. No. 76 at 6-8).  The Court finds Defendants' arguments unavailing.  In dicta, the <u>Hawaii</u> Court provided a limited summary of the Supreme Court's ruling in <u>Din</u>, stating that "the Government need provide only a statutory citation to explain a visa denial."  138 S. Ct. at 2419.  However, the <u>Hawaii</u> Court cited the very page in <u>Din</u> where the Supreme Court explicitly noted that the consular officer must <u>either</u> cite an inadmissibility statute that specifies discrete factual predicates <u>or</u> there must be a fact in the record that provides at least a facial connection to the statutory ground of inadmissibility.  <u>Id.</u> (citing <u>Din</u>, 135 S. Ct. at 2141).  Further, there is no indication in <u>Hawaii</u> that the Supreme Court intended to overrule <u>Din</u>.  Indeed, no court has concluded that <u>Hawaii</u> overruled either <u>Din</u> or the Ninth Circuit's opinion in <u>Cardenas</u>, which carefully summarized the <u>Din</u> decision.

13 is unsupported by any evidence or discrete fact in the record
that provides at least a facial connection to the ground of
inadmissibility. That the consular officer's determination was
"based on the in-person interview, a criminal review of Mr.
Asencio-Cordero, and a review of Mr. Asencio-Cordero's tattoos,"
do not, by themselves, provide any facts in the record to provide
a facial connection to the consular officer's "reason to believe"
that Asencio seeks to enter the United States to engage in unlawful
activity. To the contrary, Asencio does not have a criminal record.
(Dkt. No. 77 at 6 & Ex. B; see Guizar Decl. ¶ 8). And the mere
existence of random tattoos does not provide a facial connection
to MS-13 or other gang membership. In multiple other cases where
courts have found that the Government's denial of an immigrant visa
was bona fide, the record has included discrete facts supporting
the denial – not mere conclusions. See, e.g., Matushkina v.
Nielsen, 877 F.3d 289, 295-96 (7th Cir. 2017), reh'g denied (Jan.
26, 2018) (consular officer cited § 1182(a)(6)(C)(i), which
precludes admissibility for an alien who fraudulently or willfully
misrepresents a material fact, and the plaintiff acknowledged in
her consular interview that she omitted material information);
Morfin v. Tillerson, 851 F.3d 710, 711 714 (7th Cir. 2017), cert.
denied, No. 17-98, 2017 WL 3136962 (U.S. Oct. 30, 2017) (alien
previously indicted for possessing cocaine, with intent to
distribute); Hazama, 851 F.3d at 709-10 (consular officer's
decision to deny alien's visa application on ground that alien
previously engaged in terrorist acts was facially legitimate and
bona fide, as the record contained undisputed facts that when alien
was 13 years old he threw rocks at armed Israeli soldiers); Allen

11

v. Milas, No. 15 CV 0705, 2016 WL 704353, at *3 (E.D. Cal. Feb. 23, 2016), aff'd 896 F.3d 1094 (9th Cir. 2018) ("[T]he consular office determined that she was ineligible for a visa . . . because she was convicted in a German court of theft . . . [and] for illicit acquisition of narcotics."); Santos v. Lynch, No. 15 CV 0979, 2016 WL 3549366, at *4 (E.D. Cal. June 29, 2016) ("consular officer . . . determined that [aliens] were ineligible for visas . . . because they lived unlawfully in the United States for a period exceeding 1 year"); Sidney v. Howerton, 777 F.2d 1490, 1491-92 (11th Cir. 1985) ("the Record supports the INS'[s] contention that one of its reasons for denying Sidney's release request was that Sidney's track record indicated a likelihood that he would abscond"); see also Yafai v. Pompeo, 912 F.3d 1018, 1027-28 (7th Cir. 2019) (summarizing cases and noting that "[i]n each case, . . . we also went past the statutory citations and took notice of the evidence supporting the stated ground for inadmissibility") (Ripple, J., dissenting); Amanullah v. Nelson, 811 F.2d 1, 11 (1st Cir. 1987) ("We thus scrutinize the record to ascertain whether Cobb advanced a facially legitimate and bona fide reason for withholding parole from these appellants.").

The State Department's policies and procedures suggest that the consular official should have provided Asencio with a more thorough explanation for the visa denial. The stated reason for the consular official's decision was that he had "reason to believe" that Asencio was seeking to enter the United States to engage in "unlawful activity," apparently because he was suspected of being a member of the MS-13 criminal gang. "The term 'reason

to believe' . . . shall be considered to require a determination based upon facts or circumstances which would lead a reasonable person to conclude that the applicant is ineligible to receive a visa as provided in the INA and as implemented by the regulations." 22 C.F.R. § 40.6; see generally Roman v. United States Dep't of State, No. 15 CV 0887, 2017 WL 1380039, at *1 (W.D. Mich. Mar. 27, 2017), report and recommendation adopted, No. 15 CV 0887, 2017 WL 1366504 (W.D. Mich. Apr. 14, 2017) (consular official noting that "the 'reason to believe' standard refers to more than just mere suspicion; it is a probability, supported by the facts, that the alien is a member of an organized criminal entity"). Moreover, all documentation and other evidence submitted by the visa applicant "shall be considered by the [consular] officer." Id. § 42.65(a). While the statute states that "a consular officer is not required to provide an explanation of an alien's visa denial if it is premised on the alien's inadmissibility on criminal or security-related grounds," 8 U.S.C. § 1182(b)(3), DOS's Foreign Affairs Manual requires consular officials to provide "[t]he factual basis for the refusal" unless the DOS instructs the consular official "not to provide notice" or the consular official "receive[s] permission from the [DOS] not to provide notice." 9 FAM 504.11-3(A)(1)(b)-(c). The Foreign Affairs Manual also includes specific requirements when the consular official identifies a "fact that the applicant is a member of a known criminal organization," such as "the Mara Salvatrucha 13 (MS 13)." 9 FAM 302.5-4(B)(2)(a). In these circumstances, the official "must . . . submit a request for an advisory opinion." Id.

Further, the consular officer's conclusion was disputed by the gang expert's sworn declaration. Sometimes even the existence of alleged facts may not satisfy the "facially legitimate and bona fide" standard where the visa applicant credibly disputes the allegations. For example, in Morfin, the Seventh Circuit observed that "the refusal to issue Ulloa a visa could be said to lack a 'facially legitimate and bona fide reason' (in Mandel's words) if the consular official had concluded that the indictment's charges were false, or if [the applicant] had presented strong evidence of innocence that the consular officer refused to consider." 851 F.3d at 713-14. Similarly, in Hazama, the court noted that "if the undisputed record includes facts that would support that ground, our task is over." 851 F.3d at 709 (emphasis added); accord Matushkina, 877 F.3d at 294; Khachatryan v. United States, No. CV 17 7503, 2018 WL 4629622, at *4 (D.N.J. Sept. 27, 2018); cf. Din, 135 S. Ct. at 2141 (it was undisputed that the applicant worked for the Taliban); Bertrand v. Sava, 684 F.2d 204, 213 (2d Cir. 1982) (uncontroverted evidence indicates that the INS district director properly exercised discretion in denying parole to unadmitted aliens); Al Khader v. Pompeo, No. 18 CV 1355, 2019 WL 423141, at *5 (N.D. Ill. Feb. 4, 2019) ("the undisputed record includes facts that support the consular officer's determination") (emphasis added). Here, Guizar, an attorney who has appeared as a gang expert in state court and federal immigration court and is "intimately familiar with tattoos that are commonly known as gang tattoos," opined that "none of the tattoos . . . on [Asencio's] body [are] of any currently known gang or criminal organization known to exist in El Salvador or in the United States." (Guizar

Decl. ¶¶ 7-9).  Indeed, Guizar asserted that "Asencio is not a gang member, nor is there anything that I am aware of that can reasonably link him to any known criminal organization." (Id. ¶ 10).  Thus, a credible dispute exists as to whether Asencio is or ever has been a member of MS-13.  Indeed, it appears that the consular officer refused to consider Asencio's strong evidence that he was not.  See Morfin, 851 F.3d at 713-14 ("the refusal to issue [the applicant] a visa could be said to lack a 'facially legitimate and bona fide reason' . . . if [the applicant] had presented strong evidence of innocence that the consular officer refused to consider"); see also Yafai, 912 F.3d at 1028 (Ripple, J., dissenting) ("the evidence submitted by Mr. Yafai raises the distinct possibility that the consular officer . . . never considered the evidence submitted").

Accordingly, limited discovery is warranted to test whether there is a fact in the record that provides a facial connection to the statute at issue and, thus, whether the consular officer's stated "reason to believe" is facially legitimate and bona fide.

**CONCLUSION**

For the reasons discussed above, the Court finds that Plaintiffs are entitled to limited discovery in support of their claims.  Plaintiffs may seek a deposition - or a Rule 31 deposition by written questions, if Defendants prefer - of the consular official who refused the visa application of Asencio on or about December 28, 2015, regarding the discrete facts in the record that provide a facial connection to Asencio's purported MS-13

affiliation and the consular officer's consideration of the gang

expert's declaration.[5]


DATED: April 2, 2019


                                        /S/ _____
                                     ALKA SAGAR
                          UNITED STATES MAGISTRATE JUDGE

---

[5]     The parties may advise the Court of the necessity for a hearing and/or telephonic conference to resolve any remaining issues relating to discovery production by contacting the Courtroom Deputy via telephone or email *only* after they have engaged in at least two attempts to resolve the dispute without court involvement.   <u>See</u> http://www.cacd.uscourts.gov/judges-schedules-procedures.