1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA MUÑOZ and LUIS ERNESTO ASENCIO-CORDERO,<br><br>                  Plaintiffs,<br><br>     v.<br><br>UNITED STATES DEPARTMENT OF STATE, et al.,<br><br>                  Defendants. | CASE NO. CV 17-0037 AS<br><br>**MEMORANDUM OPINION AND ORDER**<br><br>**GRANTING DEFENDANTS' MOTION**<br><br>**FOR SUMMARY JUDGMENT** |

### INTRODUCTION

On January 3, 2017, Sandra Muñoz and Luis Ernesto Asencio-Cordero filed a Complaint for Declaratory Relief against the U.S. Department of State ("DOS"); Antony Blinken, the U.S. Secretary of State; and Brendan O'Brien, the U.S. Consul General in San Salvador, El Salvador,[1] challenging the denial of Asencio-Cordero's

---

[1]   The Complaint originally named John F. Kerry as U.S. Secretary of State and Mark Leoni as U.S. Consul General.  Antony Blinken, the current U.S. Secretary of State, and Brendan O'Brien, Consul General at the U.S. Embassy in San Salvador, have been substituted for their predecessors.  Fed. R. Civ. P. 25(d).

visa application.  (Dkt. No. 1).  The Complaint raises six causes of action: (1) the visa denial was not facially legitimate and bona fide (Count One); (2) the visa denial violates the Equal Protection Clause of the Fifth Amendment (Count Two); (3) the visa denial violates the separation of powers (Count Three); (4) the visa denial was made in bad faith (Count Four); (5) the visa denial without judicial review violates the Administrative Procedures Act (Count Five); and (6) 8 U.S.C. § 1182(a)(3)(A)(ii) is unconstitutionally vague (Count Six).  (Compl. ¶¶ 34-51). Plaintiffs seek a declaration that the DOS's reason for denying Asencio-Cordero's visa application was not bona fide and 8 U.S.C. § 1182(a)(3)(A)(ii) is unconstitutionally vague.  (Id. at 12).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 25, 27, 29).

On September 29, 2017, Defendants filed a Motion to Dismiss, which the Court denied on December 11, 2017.  (Dkt. Nos. 37, 47). On December 26, 2017, Defendants answered the Complaint (Dkt. No. 48), and on January 2, 2018, they filed an amended answer (Dkt. No. 49).  On April 4, 2018, Plaintiffs filed a Motion for Judgment on the Pleadings, which the Court denied on June 8, 2018.  (Dkt. No. 52, 59).  On April 2, 2019, the Court granted Plaintiffs the authority to conduct limited discovery.  (Dkt. No. 82).

Currently pending before the Court are the parties' cross-motions for summary judgment, which have been fully briefed.  (See Dkt. Nos. 101 ("Plaintiffs' Motion"), 103 ("Defendants' Motion"),

115 ("Defendants' Opposition"), 116 ("Plaintiffs' Opposition") 117 (Defendants' statement of genuine disputes of material facts), and 118 (Plaintiffs' statement of genuine disputes of material facts)).[2] On January 6, 2021, the Court held a telephonic hearing on the motions. (Dkt. No. 119).[3] For the reasons discussed below, Defendants' Motion is GRANTED, Plaintiffs' Motion is DENIED, and the case is DISMISSED.

## STATEMENT OF FACTS[4]

Plaintiff Asencio-Cordero is a native and citizen of El Salvador who arrived in the United States in March 2005. (Compl. ¶ 15). In July 2010, he married Plaintiff Muñoz, a U.S. citizen by birth. (Compl. ¶ 16). In April 2015, Asencio-Cordero departed the United States to pursue an immigrant visa. (Compl. ¶¶ 3, 18). The following month, after Muñoz's immigrant relative petition was approved, Asencio-Cordero was interviewed for an immigrant visa at the U.S. Consulate in El Salvador. (Compl. ¶¶ 18, 19).

On or about December 28, 2015, the Consular Section denied Asencio-Cordero's visa application by citing 8 U.S.C. §

---

[2] On January 5, 2021, Defendants filed a notice of supplemental authority, and Plaintiffs filed a response. (Dkt. Nos. 120-121).

[3] On February 17, 2021, Defendants filed a notice of supplemental authority, and Plaintiffs filed a response. (Dkt. Nos. 122-123).

[4] Based on the parties' respective statements of undisputed facts, the following facts are undisputed. (See Dkt. Nos. 101-1, 103-1, 117, 118). Citations to the Complaint and declarations are consistent with the parties' citations.

1182(a)(3)(A)(ii), which states that "[a]ny alien who a consular officer or the Attorney General knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in . . . any other unlawful activity" is ineligible to receive a visa and is ineligible to be admitted to the United States.  (Compl. ¶¶ 20, 22).

On January 20, 2016, Congresswoman Judy Chu sent the DOS a letter on Muñoz's behalf, and Consul Landon R. Taylor responded on January 21, 2016, by citing § 1182(a)(3)(A)(ii), with no further information.  (Compl. ¶¶ 23, 24).  In April 2016, the Consulate forwarded the case to the immigration visa unit for review.  (Compl. ¶ 26).  On April 13, 2016, Taylor reported to Plaintiffs: "[T]he finding of ineligibility for [Asencio-Cordero] was reviewed by the [DOS], which concurred with the consular officer's decision.  Per your request, our Immigration Visa Unit took another look at this case, but did not change the decision."  (Compl. ¶ 28).

Plaintiffs wrote to the DOS's Office of Inspector General, requesting that a reason be given for the inadmissibility decision.  (Compl. ¶ 30).  Plaintiffs submitted a declaration from Humberto Guizar, an attorney and court-approved gang expert, who reviewed photographs of Asencio-Cordero's tattoos and opined that "Asencio does not have any tattoos that are representative of the Mara Salvatrucha gang [(MS-13)] or any other known criminal street gang" in either El Salvador or the United States.[5]  (Dkt. No. 77-1, Exh.

---

[5] Guizar's declaration is dated April 27, 2016, and seems to have been submitted around that date, in support of Plaintiffs'

4

M (Guizar Decl.) at ¶¶ 1, 7-9).  Guizar concluded that "Asencio is not a gang member, nor is there anything that I am aware of that can reasonably link him to any known criminal organization." (Id. ¶ 10).  At his May 2015 interview with the consular officer, moreover, Asencio-Cordero had denied ever being associated with a criminal gang.  (Compl. ¶¶ 20-21).  However, on May 18, 2016, Christine Parker, the DOS's Chief of the Outreach and Inquiries Division of Visa Services, responded merely that the DOS "concurred in the finding of ineligibility." (Compl. ¶ 33).

On November 8, 2018, during this litigation, DOS attorney advisor Matt McNeil, who reviewed DOS's electronic database, asserted in a declaration: "[B]ased on the in-person interview, a criminal review of Mr. Asencio-Cordero, and a review of the [sic] Mr. Asencio-Cordero's tattoos, the consular officer determined that Mr. Asencio-Cordero was a member of a known criminal organization identified in 9 FAM 302-5-4(b)(2), specifically MS-13."[6]  (Dkt. No. 76-1 (McNeil Decl.) at ¶¶ 1-3).

At the telephonic hearing before the Court on January 6, 2021, counsel for Defendants clarified on the record that Asencio-Cordero's tattoos were a basis for the consular officer's decision,

request for DOS's reconsideration of the visa denial. (See Dkt. No. 77-1, Exh. M).

[6] The Foreign Affairs Manual (FAM) "is published by the Department of State and . . . contains the functional statements, organizational responsibilities, and authorities of each of the major components of the U.S. Department of State, including Consular Officers." Sheikh v. U.S. Dep't of Homeland Sec., 685 F. Supp. 2d 1076, 1090 (C.D. Cal. 2009).

in addition to information provided by law enforcement which
identified Asencio-Cordero as a member of the MS-13 gang.[7]

### SUMMARY OF THE PARTIES' ARGUMENTS

Plaintiffs argue that they are entitled to summary judgment
because the government gave no "bona fide factual reason" for
denying Asencio-Cordero's visa application. (Plaintiffs' Motion
at 4-5; Plaintiffs' Opposition at 10-13). Plaintiffs also assert
that Defendants acted in bad faith, including by failing to respond
to Plaintiffs' evidence rebutting the consular officer's apparent
determination that Asencio-Cordero is a gang member. (Plaintiffs'
Motion at 6-8; Plaintiffs' Opposition at 15-20). Plaintiffs
further contend that Defendants' conduct violates the APA because
it is arbitrary and capricious. (Plaintiffs' Motion at 14-16; see
Plaintiffs' Opposition at 13). In addition, Plaintiffs assert that
8 U.S.C. § 1182(a)(3)(A)(ii) is unconstitutionally vague, and they
have standing to challenge it. (Plaintiffs' Motion at 9-14;
Plaintiffs' Opposition at 20-25).

Defendants argue that Plaintiffs' claims, including the APA
claim, are foreclosed by the doctrine of consular nonreviewability.
(Defendants' Motion at 10-22; Defendants' Opposition at 4-12, 17-
19). Defendants contend that the consular officer's decision

---

[7] Because counsel made these statements at the January 6
hearing, they were not addressed in the parties' statements of
facts, but the Court considers them as representations made on
behalf of the Government on the record in this case, which partially
illuminate the Government's redacted filings.

satisfied the requisite standard because the officer cited a legitimate statutory admissibility ground, 8 U.S.C. § 1182(a)(3)(A)(ii), which was applicable because the officer assertedly had reason to believe, based on information received from law enforcement, that Asencio-Cordero was associated with the MS-13 gang, an organized transnational criminal organization listed in 9 FAM 302.5-4(B)(2). (Defendants' Motion at 13-14; Defendants' Opposition at 1-2, 5-8). Defendants maintain that Plaintiffs were not entitled to any further information for the decision other than the mere citation to § 1182(a)(3)(A)(ii). (Defendants' Motion at 15; Defendants' Opposition at 4-6). Defendants thus assert that by disclosing any information regarding Asencio-Cordero's suspected association with MS-13, they have given Plaintiffs "far more" than the law requires. (Defendants' Motion at 17-18). Defendants further assert that Plaintiffs have not made any affirmative showing of bad faith, and there is no evidence to suggest that the consulate officer's decision was based on knowingly false or improper grounds. (Defendants' Motion at 18-21; Defendants' Opposition at 9-12). Defendants additionally argue that Plaintiffs' vagueness challenge to § 1182(a)(3)(A)(ii) fails for lack of standing and on the merits. (Defendants' Motion at 22-25; Defendants' Opposition at 2, 12-16).

**STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is

7

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict." Id. at 250.

The moving party has the initial burden of identifying relevant portions of the record demonstrating the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Material facts are those which may affect the outcome of the case." Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); In re Caneva, 550 F.3d 755, 760 (9th Cir. 2008). "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." Long, 442 F.3d at 1185; Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). "When presented with cross-motions for summary judgment, [a court] review[s] each motion for summary judgment separately, giving the nonmoving party for each motion the benefit of all reasonable inferences." Center for Bio-Ethical Reform, Inc. v. L.A. County Sheriff Dep't, 533 F.3d 780, 786 (9th Cir. 2008).

If the moving party sustains its burden, the burden then shifts to the nonmovant to cite to "particular parts of materials in the record" demonstrating a material fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1); Celotex Corp., 477 U.S. at

1   324; Anderson, 477 U.S. at 256.   Summary judgment must be granted

2   for the moving party if the nonmoving party "fails to make a showing

3   sufficient to establish the existence of an element essential to

4   that party's case, and on which that party will bear the burden of

5   proof at trial." Celotex Corp., 477 U.S. at 322; see also Anderson,

6   477 U.S. at 252 (parties bear the same substantive burden of proof

7   as would apply at a trial on the merits).

8

9       "[I]n ruling on a motion for summary judgment, the nonmoving

10  party's evidence 'is to be believed, and all justifiable inferences

11  are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526

12  U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255); Groh v.

13  Ramirez, 540 U.S. 551, 562 (2004).   However, summary judgment

14  cannot be avoided by relying solely on "conclusory allegations [in]

15  an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888

16  (1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

17  475 U.S. 574, 586 (1986) (more than a "metaphysical doubt" is

18  required to establish a genuine dispute of material fact).   "The

19  mere existence of a scintilla of evidence in support of the

20  plaintiff's position" is insufficient to survive summary judgment;

21  "there must be evidence on which the [fact finder] could reasonably

22  find for the plaintiff." Anderson, 477 U.S. at 252.

23

24

25

26

27

28

1

**DISCUSSION**

2

3 **A.    The Visa Denial Did Not Violate Plaintiffs' Rights**

4

5        **1.    Applicable Law**

6

7        "Although the Constitution contains no direct mandate relating

8 to immigration matters, the Supreme Court has long recognized that

9 the political branches of the federal government have plenary

10 authority to establish and implement substantive and procedural

11 rules governing the admission of aliens to this country." Jean v.

12 Nelson, 727 F.2d 957, 964 (11th Cir. 1984), aff'd, 472 U.S. 846

13 (1985). "The exclusion of aliens is a fundamental act of

14 sovereignty.  The right to do so stems not alone from legislative

15 power but is inherent in the executive power to control the foreign

16 affairs of the nation." U.S. ex rel. Knauff v. Shaughnessy, 338

17 U.S. 537, 542 (1950). "In practice, however, the comprehensive

18 character of the [Immigration and Nationality Act (INA)] vastly

19 restricts the area of potential executive freedom of action, and

20 the courts have repeatedly emphasized that the responsibility for

21 regulating the admission of aliens resides in the first instance

22 with Congress." Jean, 727 F.2d at 965. "Thus, as a result of the

23 existence of inherent executive power over immigration and the

24 broad delegations of discretionary authority in the INA, the

25 separation-of-powers doctrine places few restrictions on executive

26 officials in dealing with aliens who come to this country in search

27 of admission or asylum." Id. at 967. "The Court without exception

28 has sustained Congress' plenary power to make rules for the

admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." Kleindienst v. Mandel, 408 U.S. 753, 766 (1972) (citation omitted). "When Congress delegates this plenary power to the Executive, the Executive's decisions are likewise generally shielded from administrative or judicial review." Andrade-Garcia v. Lynch, 828 F.3d 829, 834 (9th Cir. 2016); see Knauff, 338 U.S. at 544 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.").

Nevertheless, the Government's plenary power "does not mean that it is wholly immune from judicial review." Jean, 727 F.2d at 975; see Hazama v. Tillerson, 851 F.3d 706, 708 (7th Cir. 2017) ("the Court has never entirely slammed the door shut on review of consular decisions on visas"). Rather, "courts have identified a limited exception to the doctrine of consular nonreviewability where the denial of a visa implicates the constitutional rights of American citizens." Bustamante v. Mukasey, 531 F.3d 1059, 1061 (9th Cir. 2008).

This limited exception to the doctrine of consular nonreviewability traces to the Mandel decision. Dr. Ernest Mandel was a Belgian journalist and a self-described revolutionary Marxist, who had been invited by college professors, all of them U.S. citizens, to speak at a university conference. Mandel, 408 U.S. at 756-57. The consulate denied Mandel's visa application, finding him inadmissible under the immigration laws at that time, which barred non-citizens who advocate world communism, and the

11

Attorney General declined to grant a waiver. Id. at 757; see Cardenas v. United States, 826 F.3d 1164, 1169 (9th Cir. 2016). Mandel, along with a number of American professors, challenged the denial. Mandel, 408 U.S. at 759-60. While the Supreme Court ruled that "Mandel personally, as an unadmitted and nonresident alien, had no constitutional right of entry," the Court found that the denial of Mandel's visa implicated the professors' First Amendment right to receive ideas. Id. at 762, 765-66. Nevertheless, the Supreme Court "declined to balance the First Amendment interest of the professors against 'Congress' plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.'" Kerry v. Din, 576 U.S. 86, 103 (2015) (Kennedy, J., concurring) (quoting Mandel, 408 U.S. at 766) (other citation omitted). Instead, the Mandel Court "limited its inquiry to the question whether the Government had provided a 'facially legitimate and bona fide' reason for its action." Id.; see Mandel, 408 U.S. at 770 ("We hold that when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant.").

The Supreme Court recently returned to the nonreviewability issue in Din. Fauzia Din, a U.S. citizen, was married to Kanishka Berashk, an Afghan citizen and former civil servant in the Taliban regime. Din, 576 U.S. at 89. The consulate denied Berashk's visa application, finding him inadmissible under 8 U.S.C. § 1182(a)(3),

a "statutory provision prohibiting the issuance of visas to persons who engage in terrorist activities," but the consulate gave no further explanation.  Id. at 90, 102.  When Din challenged the decision in court, the United States District Court for the Northern District of California granted the Government's motion to dismiss the complaint.  The Ninth Circuit then reversed the district court's decision.  The court noted, based on its earlier holding in Bustamante v. Mukasey, 531 F.3d at 1062, that as a U.S. citizen, Din had a protected liberty interest in marriage that entitled her to review of the denial of her spouse's visa.  Din v. Kerry, 718 F.3d 856, 860 (9th Cir. 2013), vacated, 576 U.S. 86 (2015).  The Court held that the government's visa denial did not satisfy the standard under Mandel because it did not offer a factual basis or cite to a narrow enough ground to permit the court to determine that the government had properly construed the applicable statute.  Id. at 861-62.

The Supreme Court reversed the Ninth Circuit in a plurality opinion.  Din, 576 U.S. 86.  While a three-justice plurality concluded that a citizen, such as Din, had no due process right with respect to her spouse's visa denial, that view did not garner a majority of the Court.[8]  Instead, the two-justice concurrence,

---

[8] The four-justice dissent concluded that Din had a due process liberty interest in the matter, Din, 576 U.S. at 107-10 (Breyer, J., dissenting), and the two-justice concurrence "assumed without deciding" that she had this right, id. at 103 (Kennedy, J., concurring).  It therefore appears that the Ninth Circuit's Bustamante holding remains intact, such that a U.S. citizen has a protected liberty interest with respect to the denial of her spouse's visa application.  See Bustamante, 531 F.3d at 1062.

which the Ninth Circuit subsequently held to be the controlling Din analysis, assumed without deciding that Din's constitutional rights were burdened by the visa denial, but held that the reasons given by the Government satisfied Mandel's "facially legitimate and bona fide" standard.  Din, 576 U.S. at 102-06 (Kennedy, J., concurring);[9] see also Cardenas, 826 F.3d at 1171-72 (determining that the Kennedy concurrence in Din "represents the holding of the Court").  Specifically, Justice Kennedy, joined by Justice Alito, concluded that the Government's citation to § 1182(a)(3)(B) alone sufficed as a "facially legitimate and bona fide reason" because, "unlike the waiver provision at issue in Mandel, which granted the Attorney General nearly unbridled discretion, § 1182(a)(3)(B) specifies discrete factual predicates the consular officer must find to exist before denying a visa."[10]  Din, 576 U.S. 105.

As construed by the Ninth Circuit in Cardenas, the Supreme Court's controlling Din concurrence laid out a two-part test for determining whether the denial of a visa provides the "facially

_____

[9] All subsequent citations to Din refer to Justice Kennedy's concurrence.

[10] Section 1182(a)(3)(B) precludes visas for non-citizens who have engaged in, incited, or endorsed, or are believed to be likely to engage in, any terrorist activity.  8 U.S.C. § 1182(a)(3)(B)(i).  However, the statute sets forth the specific types of facts needed to constitute "terrorist activity" and to qualify as "engag[ing] in terrorist activity."  Id. § 1182(a)(3)(B)(iii)-(iv).  In contrast, the statute at issue in Mandel generally precluded visas for non-citizens "who advocate[d] the economic, international, and governmental doctrines of World communism," 8 U.S.C. § 1182(a)(28)(D) (1964 ed.), but it also gave the Attorney General broad discretion to grant individual exceptions, allowing the alien to obtain a temporary visa, id. § 1182(d)(3); see Din, 576 U.S. at 102-03 (discussing Mandel).

legitimate and bona fide reason" required by Mandel. "First, the consular officer must deny the visa under a valid statute of inadmissibility." Cardenas, 826 F.3d at 1172. "Second, the consular officer must cite an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,' or there must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." Id. (quoting Din, 576 U.S. at 105). "Once the government has made that showing, the plaintiff has the burden of proving that the reason was not bona fide by making an 'affirmative showing of bad faith on the part of the consular officer who denied [] a visa.'" Id. (quoting Din, 576 U.S. at 105). This test is the only recognized exception to consular nonreviewability; there is no separate right under the APA to review a consular officer's visa denial. See Allen v. Milas, 896 F.3d 1094, 1108 (9th Cir. 2018) ("We join the D.C. Circuit in holding that the APA provides no avenue for review of a consular officer's adjudication of a visa on the merits.").

In Cardenas, the Ninth Circuit concluded that the test, under Mandel and Din, was satisfied because the consular officer (1) cited a valid statute of inadmissibility, § 1182(a)(3)(A)(ii), and (2) "provided a bona fide factual reason that provided a 'facial connection' to the statutory ground of inadmissibility: the belief that [the visa applicant] was a 'gang associate' with ties to the Sureno gang." Id. The officer's gang-association finding was expressly based on facts provided in the record, including the fact that the alien had been identified by police as a Sureno gang

associate when arrested in June 2008 as a passenger in a vehicle owned and driven by a known Sureno gang member. <u>Id.</u> at 1167–68. When the alien's visa application was denied, the consulate informed the alien, in writing, that "the circumstances of [the June 2008] arrest, as well as information gleaned during the consular interview, gave the consular officer sufficient 'reason to believe' that [the alien] has ties to an organized street gang." <u>Id.</u> at 1168.

## 2.   **Analysis**

Plaintiff Muñoz, as a U.S. citizen married to Plaintiff Asencio-Cordero, has a protected liberty interest in the denial of Asencio-Cordero's visa. <u>See Bustamante</u>, 531 F.3d at 1062.[11]   The Court therefore applies the two-part test for determining whether a "facially legitimate and bona fide reason" was provided, as required by <u>Mandel</u>.   The first part is clearly satisfied here, since it is undisputed that the consular officer's citation to § 1182(a)(3)(A)(ii) was sufficient to demonstrate that the visa denial relied on a valid statute of inadmissibility. <u>See Din</u>, 576 U.S. at 104 (consular officer's citation to § 1182(a)(3)(B) "suffices to show that the denial rested on a determination that Din's husband did not satisfy the statute's requirements"); <u>Cardenas</u>, 826 F.3d at 1172 ("The consular officer gave a facially legitimate reason to deny Mora's visa because he cited a valid

---

[11] As noted above, this holding in <u>Bustamante</u>, which the Ninth Circuit also relied on in <u>Din</u>, 718 F.3d at 860, was not overturned by a majority of the Supreme Court.

statute of inadmissibility, § 1182(a)(3)(A)(ii).").  Less clear is whether the Government satisfied the second part of the test, which requires either (a) that the consular officer "cite an admissibility statute that 'specifies discrete factual predicates the consular officer must find to exist before denying a visa,'" or (b) that there be "a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." Cardenas, 826 F.3d at 1172 (quoting Din, 576 U.S. at 105).

Defendants argue that mere citation to the statute sufficed. (Defendants' Opposition at 4-6).  The Court has already rejected that argument.  (See Dkt. No. 59 at 11-15).  Unlike the provision at issue in Din, § 1182(a)(3)(A)(ii) does not provide the "discrete factual predicates" necessary to deny a visa because the statute merely precludes admission to a non-citizen who a consular officer "knows, or has reasonable ground to believe, seeks to enter the United States to engage . . . in . . . any other unlawful activity."  8 U.S.C. § 1182(a)(3)(A)(ii); see also Din, 576 U.S. at 105 ("But unlike the waiver provision at issue in Mandel, which granted the Attorney General nearly unbridled discretion, § 1182(a)(3)(B) specifies discrete factual predicates the consular officer must find to exist before denying a visa."); Cardenas, 826 F.3d at 1172 ("[T]here must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility.") (quoting Din, 576 U.S. at 105).

Defendants cite to the Supreme Court's decision in Trump v. Hawaii, 138 S. Ct. 2392 (2018), as support for their contention

17

that the mere citation to § 1182(a)(3)(A)(ii) sufficed. (See Defendants' Opposition at 5). In dicta, the Hawaii Court provided a limited summary of the Supreme Court's ruling in Din, stating that "the Government need provide only a statutory citation to explain a visa denial." 138 S. Ct. at 2419. However, the Hawaii Court cited the very page in Din where the Supreme Court explicitly noted that the consular officer must either cite an inadmissibility statute that specifies discrete factual predicates or there must be a fact in the record that provides at least a facial connection to the statutory ground of inadmissibility. Id. (citing Din, 135 S. Ct. at 2141). Further, there is no indication in Hawaii that the Supreme Court intended to overrule Din. Indeed, no court has concluded that Hawaii overruled either Din or the Ninth Circuit's opinion in Cardenas, which carefully summarized the Din decision. This Court follows Cardenas and Justice Kennedy's reasoning in Din to conclude that the mere citation to § 1182(a)(3)(A)(ii) did not suffice.

However, the Government has offered further explanations for the consulate officer's decision. First, Defendants have informed Plaintiffs that the visa was denied based on § 1182(a)(3)(A)(ii) because the consulate officer determined that Asencio-Cordero was a member of MS-13, a recognized transnational criminal organization. Defendants submitted a declaration stating that the officer made this determination "based on the in-person interview, a criminal review of Mr. Asencio-Cordero, and a review of the [sic] Mr. Asencio-Cordero's tattoos." (Dkt. No. 76-1 (McNeil Decl.) at ¶ 5). Defendants also provided to Plaintiffs' counsel and the

Court several redacted documents from the Consolidated Consular Database regarding the officer's determinations in Asencio-Cordero's case, although the redactions encompass essentially all material portions of the documents.[12]   (See Dkt. No. 112).   To the extent these documents and other representations still left unclear whether the consular officer's investigation yielded any *facts* that "provide[d] at least a facial connection to" the consular officer's determination, Defendants' counsel later clarified, at the hearing on January 6, 2021, that the tattoos specifically contributed to the determination, as did law enforcement information which identified Asencio-Cordero as an MS-13 gang member.

Plaintiffs maintain that this still does not suffice, and that Defendants have failed to identify any facts supporting the decision.   Among other things, Plaintiffs contend that at the January 6 hearing, Defendants "conceded" that law enforcement merely gave the consular officer its *conclusion* that Asencio-Cordero was an MS-13 gang member, "without providing the consular

---

[12] The documents include an October 2015 memorandum from the Fraud Prevention Unit at the U.S. Embassy in El Salvador, as well as an Advisory Opinion request submitted by a consular officer and the Visa Office's response to that request.   Defendants submitted unredacted copies to the Court for *in camera* review.   (See Dkt. No. 112).   Since Plaintiffs have been unable to view these copies, the Court agrees with Plaintiffs that it cannot consider the redacted material in ruling on the substantive issues in this case. See Am.-Arab Anti-Discrimination Comm. v. Reno, 70 F.3d 1045, 1069-70 (9th Cir. 1995) (noting "the firmly held main rule that a court may not dispose of the merits of a case on the basis of *ex parte, in camera* submissions"; further stating that the "use of undisclosed information in adjudications should be presumptively unconstitutional," and "[o]nly the most extraordinary circumstances could support one-sided process").

officer with any factual basis that led them to that conclusion."
(Dkt. No. 123 at 5). However, Plaintiffs wrongly assume they have
a right to examine or dispute the officer's assessment of evidence
underlying the decision. To the contrary, within the Court's
limited jurisdiction to review consular decisions, it is enough
for the Government to have disclosed that the officer relied on
these *facts* – specifically, (1) that the tattoos signaled to the
officer that Asencio-Cordero was an MS-13 member, and (2) that law
enforcement also identified him as one. Although Defendants have
declined to publicly disclose any further information on this issue
(on the grounds of consular nonreviewability and law enforcement
privilege), the Court finds that these facts in the record satisfy
the government's obligation under Cardenas and Din by "'provid[ing]
at least a facial connection to' the statutory ground of
inadmissibility."[13] Cardenas, 826 F.3d at 1172 (quoting Din, 576
U.S. at 105); see also 9 FAM 302.5-4(B)(2) (listing MS-13 as a
criminal organization whose members are ineligible for visas under
§ 1182(a)(3)(A)(ii)); Cardenas, 826 F.3d at 1172 ("[The consular
officer] provided a bona fide factual reason that provided a
'facial connection' to the statutory ground of inadmissibility
[under § 1182(a)(3)(A)(ii)]: the belief that Mora was a 'gang
associate' with ties to the Sureno gang."); Burris v. Kerry, 2014

---

[13] Defendants' counsel's clarifications in the January 6
hearing differed from the government's prior statements on the
record - and to some extent account for why the Court reaches a
different conclusion here than in previous orders (see Dkt. Nos.
82, 93) - insofar as the Government's prior statements, as phrased,
expressed only that the officer had reviewed and considered all
the facts in making the determination. In contrast, the Government
has now clarified that the tattoos and law enforcement information
actually connected Asencio-Cordero to MS-13.

20

WL 1267272, at *5 (E.D. Tex. Mar. 27, 2014) (Government sufficiently identified basis of visa denial under § 1182(a)(3)(A)(ii) based on consular officer's finding that applicant had "numerous tattoos, some of which are consistent with gang membership and a history of drug use").

Because Defendants have shown that there were facts that provided at least a facial connection to the statutory ground of inadmissibility, Plaintiffs have "the burden of proving that the reason was not bona fide by making an 'affirmative showing of bad faith on the part of the consular officer who denied [Asencio-Cordero] a visa.'" Cardenas, 826 F.3d at 1172 (quoting Din, 576 U.S. at 105). Subsequent conduct by other actors does not demonstrate bad faith by the officer who made the original decision. See id. ("[A]llegations about the second interview obviously cannot raise a plausible inference that the officer acted in bad faith in making the original decision.").

Plaintiffs argue that the Government acted in bad faith here by withholding the factual basis for the visa denial, and thus depriving Plaintiffs of "the opportunity to argue against it." (Plaintiffs' Opposition at 10, 17-18). The Court disagrees. The consular officer did not demonstrate bad faith by explaining the decision with nothing more than a citation to § 1182(a)(3)(A)(ii). Consular officers are not required to give applicants any further explanation.

The statute, for example, requires only that consular officers provide denial notices that "list[] the specific provision or provisions of law under which the alien is inadmissible" – and this notice requirement does not even apply to non-citizens, such as Asencio-Cordero, who are found inadmissible under § 1182(a)(2) or § 1182(a)(3).  8 U.S.C. § 1182(b); see Din, 576 U.S. at 105-06 (noting that while "Din perhaps more easily could mount a challenge to her husband's visa denial [(which was based on § 1182(a)(3)(B))] if she knew the specific subsection on which the consular officer relied," the requirement to provide notice of the specific subsection "does not apply when, as in this case, a visa application is denied due to terrorism or national security concerns") (citing § 1182(b)(3)).  Also, to the extent that DOS's own Foreign Affairs Manual may direct officers to give more information,[14] a failure to adhere to such guidelines does not demonstrate bad faith.  See Baluch v. Kerry, 2016 WL 10636362, at *3 (C.D. Cal. Nov. 14, 2016) ("Even if the officer did not abide by the FAM's suggestions, the departure from them is not plausible evidence of bad faith.").

Moreover, the test under Mandel and Din requires only that the officer cite the statute of inadmissibility and, at most, that there be "a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." Cardenas, 826 F.3d at 1172 (quoting Din, 576 U.S. at 105) (emphasis added).

[14] DOS's Foreign Affairs Manual requires consular officials to provide "[t]he factual basis for the refusal" unless the DOS instructs the consular official "not to provide notice" or the consular official "receive[s] permission from the [DOS] not to provide notice."  9 FAM 504.11-3(A)(1)(b)-(c).

1   There is no indication that the consular officer needs to have

2   given notice of this fact, only that it be "in the record," for

3   the purpose of review.   Although more information was made

4   available to applicants in Cardenas and other cases, those cases

5   do not suggest that such additional information was needed to

6   satisfy due process or that the absence of such information was

7   evidence of bad faith.   Plaintiffs here were not given conflicting

8   reasons for the officer's decision, and there is no evidence

9   showing that the officer had an improper motive or basis for the

10  decision.   Moreover, even without further information, Plaintiffs

11  were nonetheless able to submit a gang expert's assessment

12  disputing the finding that Asencio-Cordero was a gang member,[15] and

13  Defendants have asserted that Plaintiffs' evidence was taken into

14  consideration in the decision.   (See Dkt. No. 77-1, Exh. M (Guizar

15  Decl.); Dkt. No. 103-2 at 7).

17  Because Plaintiffs' only arguments for bad faith are based on

18  the lack of information given by the consular officer, or on

19  Defendants' subsequent withholding of further information, they

20  fail to make the requisite affirmative showing of bad faith.   Absent

21  that affirmative showing, Plaintiffs have no right to look behind

22  the officer's decision or to contest the evidence or inferences on

23  which it was based.   See, e.g., Sesay v. United States, 984 F.3d

24  312, 316 (4th Cir. 2021) ("For the doctrine of consular

---

[15] The gang expert's sworn declaration states that none of Asencio-Cordero's tattoos are associated with known gangs, and nothing the expert is aware of "can reasonably link [Asencio-Cordero] to any known criminal organization." (Guizar Decl. ¶¶ 7-10).

nonreviewability to have any meaning, we may not peer behind the decisional curtain and assess the wisdom of the consular determination."); Baluch, 2016 WL 10636362, at *2 ("Baluch essentially asks us to do what Justice Kennedy's controlling opinion in Din forbids – 'look behind' the government's 'exclusion of [her husband] for additional factual details[.]'"). Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have failed to create a genuine issue of material fact as to whether the consular officer's decision violated their rights. Plaintiffs' claims challenging that decision (Counts 1-5) therefore merit dismissal pursuant to Defendants' Motion.[16]

**B.    Section 1182(a)(3)(A)(ii) Is Not Unconstitutionally Vague**

   **1.   Applicable Law**

   The void-for-vagueness doctrine "guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." Sessions v. Dimaya, 138 S. Ct. 1204, 1212 (2018). The doctrine "guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." Id. "The degree of vagueness that the Constitution tolerates . . . depends

---

[16] This includes Plaintiffs' claim under the APA. As noted above, the APA offers no separate right to challenge consular officers' decisions because the test under Din and Cardenas is the only recognized exception to consular nonreviewability. See Allen, 896 F.3d at 1108.

in part on the nature of the enactment." <u>Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 498 (1982).

"It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." <u>United States v. Mazurie</u>, 419 U.S. 544, 550, (1975); <u>accord</u> <u>Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris</u>, 729 F.3d 937, 946 (9th Cir. 2013); <u>United States v. Dang</u>, 488 F.3d 1135, 1141 (9th Cir. 2007) ("[A] party challenging the facial validity of [a regulation] on vagueness grounds outside the domain of the First Amendment must demonstrate that the enactment is impermissibly vague in all of its applications.  Of course, under this rubric, if the statute is constitutional as applied to the individual asserting the challenge, the statute is facially valid.") (internal quotation and citations omitted); <u>see also</u> <u>Moreno v. Attorney Gen. of United States</u>, 887 F.3d 160, 165 (3d Cir. 2018) ("Because vagueness challenges are evaluated on a case by case basis, we must examine 8 U.S.C. § 1182(a)(2)(A)(i)(I) to determine whether the statute is vague as applied to Moreno.") (citations omitted).

**2.   Analysis**

As an initial matter, the parties dispute whether Plaintiffs have standing and a legal right to raise a constitutional void-for-vagueness claim against an admissibility statute. (Defendants' Motion at 22-24; Plaintiffs' Opposition at 20-25).  The answer is unclear.  It appears, for example, that both Plaintiffs have

suffered an actual injury that is fairly traceable to the statute, since the visa denial has deprived Asencio-Cordero of the right to live in the country he considered home for ten years, and it has also deprived Muñoz of her right to live with her husband in their home. See Bernhardt v. Cnty. of Los Angeles, 279 F.3d 862, 868-69 (9th Cir. 2002) (standing requires (1) that a plaintiff "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that "the injury is fairly traceable to the challenged action of the defendant"; and (3) that the injury would likely be "redressed by a favorable decision.") (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)); see also Trump, 138 S. Ct. at 2416 ("We agree that a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact."). Both Plaintiffs, moreover, appear to have Fifth Amendment due process rights regarding the visa decision, at least to some extent. Although Defendants contend that Asencio-Cordero lacks such rights because he was outside the border at the time (see Defendants' Motion at 23; Defendants' Opposition at 13-14), that fact is not necessarily determinative here. Instead, the Ninth Circuit has held that the proper approach for ascertaining whether non-citizens have constitutional rights outside the United States is the "functional approach" that the Supreme Court applied in Boumediene v. Bush, 553 U.S. 723 (2008), and the "significant voluntary connection" test used in United States v. Verdugo-Urquidez, 494 U.S. 259, 271 (1990). Ibrahim v. Dep't of Homeland Sec., 669 F.3d 983, 997 (9th Cir. 2012); see Verdugo-Urquidez, 494

1   U.S. at 271 ("[A]liens receive constitutional protections when they
2   have come within the territory of the United States and developed
3   substantial connections with this country."). In *Ibrahim*, the
4   Ninth Circuit held that the plaintiff, a Malaysian citizen,
5   "established 'significant voluntary connection' with the United
6   States," such that she could assert First and Fifth Amendment
7   claims regarding her no-fly list designation, because she had been
8   attending a doctoral program at Stanford University for four years,
9   and was denied a visa to return only after traveling to attend a
10  conference in Malaysia.[17]  *Id.* at 987, 997.  Here, prior to his
11  visa denial, Asencio-Cordero spent ten years in the United States,
12  and he lived with his wife and child, who are U.S. citizens, until
13  he departed in 2015 to pursue an immigrant visa. (*See* Dkt. No. 59
14  at 4-5).  Based on these facts, Asencio-Cordero appears to have
15  established a "significant voluntary connection" with this country,
16  which entitles him to certain Fifth Amendment due process rights,
17  even though he was on a trip to El Salvador when the visa decision
18  occurred.  *See* *Ibrahim*, 669 F.3d at 997 (noting that the purpose
19  of the plaintiff's trip abroad "was to further, not to sever, her
20  connection to the United States," and she "intended her stay abroad
21  to be brief").[18]

22

23      [17] The claims in *Ibrahim* concerned only the plaintiff's
24  designation on a no-fly list, not specifically the revocation or
    denial of her visa.  *Ibrahim*, 669 F.3d at 991.

25      [18] More recent Supreme Court cases cited by Defendants do not
26  seem to undermine this conclusion, as such cases draw a distinction
    between non-citizens seeking *initial* entry and those in deportation
27  proceedings who have established connections in the United States.
    *See* Dep't of Homeland Sec. v. Thuraissigiam, 140 S. Ct. 1959, 1963-
28  64 (2020) ("While aliens who have established connections in this

27

However, the *scope* of Plaintiffs' due process rights remains unclear.  Specifically, it is unclear whether either Plaintiff's liberty interest entitles him or her to raise a void-for-vagueness challenge to the admissibility statute.  See, e.g., Rojas-Garcia v. Ashcroft, 339 F.3d 814, 823 n.8 (9th Cir. 2003) ("while the Supreme Court has allowed aliens to bring vagueness challenges to deportation statutes, an alien may not have the same right to challenge exclusion provisions") (citation omitted); Boggala v. Sessions, 866 F.3d 563, 569 n.5 (4th Cir. 2017) ("It is unclear whether an alien is allowed to bring a vagueness challenge to admissibility laws."); Beslic v. INS, 265 F.3d 568, 571 (7th Cir. 2001) ("it is questionable whether [a void-for-vagueness] challenge to an admissibility statute would be cognizable"); see also Boutilier v. INS, 387 U.S. 118 (1967) (non-citizen could not challenge his deportation by asserting vagueness claim against admissibility statute in part because he was "not being deported for conduct engaged in after his entry into the United States, but rather for characteristics he possessed at the time of his entry").[19]

---

country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause."). Asencio-Cordero was not "at the threshold of *initial* entry" when his visa was denied, since he had already "established connections in this country" while living here for ten years.

[19] As Plaintiffs point out, non-citizen plaintiffs have been permitted to raise void-for-vagueness claims against admissibility statutes in some cases. (See Plaintiffs' Opposition at 22-24).  In such cases, however, the plaintiffs were in the United States

28

1      Regardless, the Court need not determine whether either
2  Plaintiff has a legal right to bring the vagueness claim because
3  Plaintiffs fail to demonstrate that the challenged statute, 8
4  U.S.C. § 1182(a)(3)(A)(ii), is unconstitutionally vague.  They fail
5  to do so particularly because they have not shown that the statute
6  is vague as applied in this case.  See Kashem v. Barr, 941 F.3d
7  358, 375 (9th Cir. 2019) ("[V]agueness challenges to statutes that
8  do not involve First Amendment violations must be examined as
9  applied to the defendant. . . . [A]s a general matter, a defendant
10  who cannot sustain an as-applied vagueness challenge to a statute
11  cannot be the one to make a facial vagueness challenge to the
12  statute.") (internal quotations and citations omitted).

14      The challenged statute provides that "[a]ny alien who a
15  consular officer or the Attorney General knows, or has reasonable
16  ground to believe, seeks to enter the United States to engage
17  solely, principally, or incidentally in . . . any other unlawful
18  activity" is ineligible to receive a visa and to be admitted to
19  the United States.  Although the language of this provision

20  challenging their removal, and the purported basis for their
21  exclusion concerned criminal acts committed within the United
   States.  See Martinez-de Ryan v. Whitaker, 909 F.3d 247 (9th Cir.
22  2018); Tseung Chu v. Cornell, 247 F.2d 929 (9th Cir. 1957).  Here,
   Plaintiff was denied entry while outside the United States, and
23  that denial was based on his gang membership – which, as opposed
   to the discrete, U.S.-based actions underlying the decisions in
24  Martinez-de Ryan and other cases, was a status that presumably
   continued at the time of the officer's visa decision.  These
25  differences may indeed be material.  See Martinez-de Ryan, 909 F.3d
   at 251 (distinguishing Boutilier because the petitioner in that
26  case was being deported for "a status or condition ('psychopathic
   personality')" that he was determined to have possessed at the time
27  of his entry, rather than for conduct engaged in after his entry).
28

certainly could be construed to encompass innumerable grounds for ineligibility, the consular officer here did not apply the statute because Asencio-Cordero might incidentally partake in jaywalking, or any other potentially unreasonable grounds for denial of entry. Instead, the officer found Asencio-Cordero inadmissible under § 1182(a)(3)(A)(ii) because the officer determined that Asencio-Cordero was a member of MS-13, a recognized transnational criminal organization known for posing a threat to the safety and security of U.S. citizens. See also 9 FAM 302.5-4(B)(2) (listing MS-13 as a criminal organization whose members are ineligible for visas under § 1182(a)(3)(A)(ii)); U.S. Department of Treasury, Treasury Sanctions Latin American Criminal Organization (Oct. 11, 2012), available at http://www.treasury.gov/press-center/press-releases/pages/tg1733.aspx (press release announcing designation of MS-13 as a transnational criminal organization, and characterizing MS-13 as "an extremely violent and dangerous gang responsible for a multitude of crimes that directly threaten the welfare and security of U.S. citizens");[20] United States v. Lopez, 957 F.3d 302, 304 (1st Cir. 2020) (referencing the "notorious criminal gang, famously known as MS-13"); Solomon-Membreno v. Holder, 578 F. App'x 300, 302 n.2 (4th Cir. 2014) ("The plague that is MS-13 . . . has made significant inroads into the United States. A complete list

---

[20] The treasury secretary's designation was made pursuant to Executive Order 13581, which defines a "transnational criminal organization" as one that, among other things, "engages in an ongoing pattern of serious criminal activity involving the jurisdictions of at least two foreign states" and "threatens the national security, foreign policy, or economy of the United States." Exec. Order No. 13581, 76 Fed. Reg. 44,757 (July 24, 2011).

of federal criminal cases involving MS-13 members would be pro-hibitively long. A cursory sample, however, reveals something of the breadth of the gang's criminal activity.") (collecting cases). A person of average intelligence would reasonably understand that membership in such an organization would imply an engagement in unlawful activity, at the very least, and thus render him ineligible for entry under § 1182(a)(3)(A)(ii). See United States v. Williams, 441 F.3d 716, 724 (9th Cir. 2006) ("In examining a statute for vagueness, we must determine whether a person of average intelligence would reasonably understand that the charged conduct is proscribed."). Moreover, even though the officer's determination on this point basically requires a prediction of future unlawful conduct, and does not depend on whether the applicant has a criminal record, that does not render the statute unconstitutionally vague. See Kashem, 941 F.3d at 364 (noting challenged provisions are "not impermissibly vague merely because they require a prediction of future criminal conduct") (citations omitted); see also Schall v. Martin, 467 U.S. 253, 279 (1984) ("[A] prediction of future criminal conduct is 'an experienced prediction based on a host of variables' which cannot be readily codified.") (quoting Greenholtz v. Neb. Penal Inmates, 442 U.S. 1, 16 (1979)).

Because Plaintiffs have not demonstrated that the statute is vague as applied, their vagueness claim merits dismissal. See Kashem, 941 F.3d at 364 ("Because we conclude the [challenged provisions] are not vague as applied, we decline to reach the plaintiffs' facial vagueness challenges.") (citing Hoffman Estates, 455 U.S. at 495).

1

**CONCLUSION**

2

3         For the reasons stated above, the Court GRANTS Defendants'

4    Motion for Summary Judgment and DENIES Plaintiffs' Motion.

5    Judgment shall be entered against Plaintiffs on all claims.

6

7         LET THE JUDGMENT BE ENTERED ACCORDINGLY

8

9    DATED: March 18, 2021

10

11                                              /s/
                                         ALKA SAGAR
12                              UNITED STATES MAGISTRATE JUDGE

13                                          AT&T: 01/06/21
14                                                00 : 46

15

16

17

18

19

20

21

22

23

24

25

26

27

28